In re Richard L. CORBETT
et ux., Debtors.

In re Bobby Gene LAVENDER,
Jr., et ux., Debtors.

In re Mary Y. MELLOR, Debtor.

In re Terry Lee NEFF et ux., Debtors.

In re Traci STEWART, Debtor.

In re Theresa G. LANGUASCO, Debtor.

In re Kim M. WALTER, Debtor.

In re Patricia A. BAYER, Debtor.

In re Janice SEOW, Debtor.

In re James E. RUNNION, Debtor.

In re Jonathan R. CARREKER, Debtor.

In re Louis H. WEATHERSBY, Debtor.

In re Gregory K. COX, Debtor.

In re Charles Clifton FORE
et ux., Debtors.

In re Sandra Kay WILLIAMS, Debtor.

In re Robert E. CLARK, Debtor.

In re Barrett L. CUNNINGHAM
et ux., Debtors.

In re Carlos BERRIOS, Debtor.

In re William Keith BISHOP, Debtor.

In re Bruce FORTUNY, Debtor.

In re Louis Kelvin RIVERA, Debtor.

In re Sylvia SIMS, Debtor.

Bankruptcy Nos. 91–06719–BKC–6C7, 92–01553–BKC–6C7, 92–01922–BKC–6C7 through 92–01926–BKC–6C7, 92–01949–BKC–6C7 through 92–01958–BKC–6C7, 92–02183–BKC–6C7 through 92–02187–BKC–6C7.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

July 31, 1992.

Michael Price, Apopka, Fla.,

George E. Mills, Jr., Orlando, Fla., Trustee.

Laurie Weatherford, Orlando, Fla., Trustee.

James C. Orr, Titusville, Fla., Trustee.

Jerald I. Rosen, Longwood, Fla., Trustee.

Leigh R. Meininger, Kenneth D. Herron, Jr., Orlando, Fla., for James Orr, Trustee.

Richard L. Corbett and F. Magdalen Corbett, Orlando, Fla., for debtors.

Francisco Colon, Jr., Winter Park, Fla.

Charles F. Edwards, Office of U.S. Trustee, Orlando, Fla.

## MEMORANDUM OPINION REGARDING EXAMINATION OF ATTORNEYS FEES

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

The 22 Chapter 7 cases captioned above involve common questions as to the reasonableness of attorneys fees charged the debtors by an attorney, T. Michael Price. The court conducted a joint evidentiary hearing in these cases on May 13, 1992. Based upon the testimony and other evidence adduced at the hearing, the court concludes that the fees charged these debtors are in fact excessive.

### I.

When each of these cases was filed, the petitions, statements, and schedules in the court files contained information that Mr. Price was serving in some capacity as attorney on behalf of the debtors. This information raised questions as to the propriety of Mr. Price's involvement and the reasonableness of the fees he charged because, well before the filing of these cases, Mr. Price was removed from the roster of attorneys permitted to practice in the United States District Court for the Middle District of Florida. Admission to that bar, of course, is a prerequisite to an attorney's ability to practice in this court. Local Rule 1.07(a) (effective June 1, 1992); former Local Rule 109(a).

The court, therefore, entered an order in each of the cases declaring the initiation of a contested matter within the meaning of

F.R.B.P. 9014 and scheduling an evidentiary hearing to review the attorneys fees. Each order further directed the United States trustee and the Chapter 7 trustee appointed in each case, jointly, as petitioners, to investigate the circumstances described in each of the orders and to present testimony and evidence at the hearing. Each order also directed Michael Price and Michael Price, P.A., as respondents, to file and serve answers. In the *Corbett* case, the only case in which another attorney appeared to be involved on behalf of the debtors, the court also directed that attorney, Francisco Colon, to file and serve an answer.

Despite the court's order, Michael Price failed to answer or respond in any of the cases, either on behalf of himself or his professional association. Despite the court's order that Mr. Price appear at the evidentiary hearing on May 13, he did not do so, either personally or through counsel. Mr. Colon answered and appeared at the hearing. Each of the Chapter 7 trustees in the 22 cases, the United States trustee, and the majority of the debtors appeared as directed.

■ There are no fee applications pending in any of the cases nor are there pending any objections filed by any party in interest to the fees paid to Mr. Price or his professional association before the cases were filed. Nevertheless, it is fundamental that the court has an independent duty to determine whether the compensation paid to an attorney in connection with a bankruptcy case exceeds the reasonable value of the services rendered. *In re Wood & Henderson*, 210 U.S. 246, 258, 28 S.Ct. 621, 626, 52 L.Ed. 1046 (1908); *In re Rheuban*, 121 B.R. 368, 379 (Bankr.C.D.Cal.1990). That authority derives from 11 U.S.C. § 329 which provides:

§ 329. Debtor's transactions with attorneys.

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under Chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

The Federal Rules of Bankruptcy Procedure further provide that the court may examine the reasonableness of fees on the motion of any party in interest or on its own motion. Specifically, Rule 2017 provides:

Rule 2017. Examination of debtor's transactions with debtor's attorney.

(a) Payment or transfer to attorney before order for relief. On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

\*    \*    \*    \*    \*    \*

The purpose of these provisions is to protect the debtor and the estate from overreaching by the debtor's attorney. *See In re Rheuban, supra* at 377.

## II.

Based on the evidence adduced at the hearing and the official records maintained

by the clerk of this court and the clerk of the district court, the facts surrounding Mr. Price's standing at the federal bar are these:

By order entered on July 3, 1991 (Misc. No. 91–MISC–J–203), the Chief Judge of the United States District Court for the Middle District of Florida, the Honorable Susan H. Black, directed the clerk of that court to remove T. Michael Price from the roster of attorneys permitted to practice in that court. Although Judge Black entered this order on July 3, 1991, it appears that the clerk did not serve the order on Mr. Price until October 8, 1991. By early October, therefore, Mr. Price knew he was no longer permitted to represent debtors or otherwise practice in this court.

On February 19, 1992, Mr. Price filed with the clerk of the district court an application for admission to the bar. The application was in the form used by new applicants to the district court's bar. In the application, Mr. Price did not reveal that he had been previously been removed from the federal bar in this district. Instead, as a new applicant would do, he supported the application with a certificate of good standing, signed on February 11, 1992, by the clerk of the United States District Court for the Southern District of Florida. Because the earlier removal by Chief Judge Black was not known by the deputy clerks who processed the application, Mr. Price was included in the roster of attorneys recommended for general admission and was routinely admitted to practice in this district by order of United States Magistrate Judge David A. Baker on March 24, 1992.

When these circumstances were discovered, Judge Baker entered an order on April 6, 1992, removing Mr. Price from the roster of attorneys permitted to practice in the federal courts for the Middle District of Florida.

Although Mr. Price was notified of his removal from the federal bar for the first time in October of 1991, he continued to advertise to the public his services as a bankruptcy attorney. At least four of the debtors in these cases contacted Mr. Price to file their bankruptcy cases as a result of advertisements they saw in *The Orlando Sentinel* that appeared during the period from December, 1991, through February, 1992. In the majority of the 22 cases, Mr. Price entered into agreements to represent the debtors and accepted payment for that representation well after he learned of his removal in October, 1991, and well before his brief readmission to the bar in late March, 1992.

Although, with two exceptions, the debtors in all of the cases employed Mr. Price before his brief readmission in March, 1992, Mr. Price did not inform any of the debtors who appeared to testify that he was unable to represent them in their bankruptcy cases in this court.

### III.

As to Mr. Price's involvement with the debtors, these 22 cases reveal three separate fact patterns. The court, therefore, will deal with each pattern separately.

### A.

▉ In the case of Richard L. and Magdalen Corbett, Case No. 91–06719, filed on December 13, 1991, the petition initiating the case stated that the attorney for the debtors was "Michael Price, a professional association." At the time, of course, Mr. Price was not permitted to represent debtors in this court. Mr. Price is a solo practitioner, although he practices law by use of a professional association. The debtors' petition further designated Francisco Colon as the name of the attorney to represent the debtors. Mr. Colon is another attorney who practices law by himself.

The Corbetts first contacted Mr. Price in the latter part of October, 1991, for bankruptcy representation. Although they never met or consulted with Mr. Colon prior to the filing of the petition and they dealt solely with Mr. Price, Mr. Colon signed the Corbetts' petition as attorney for the debtors. Mr. Price failed to advise the Corbetts that he was unable to appear before the court in their representation, but he did tell the Corbetts that Mr. Colon would appear

as their representative at the Section 341 meeting of creditors.

The evidence further reflects that the relationship between Mr. Price and Mr. Colon was established before the Corbetts' petition was filed. Mr. Price initiated contact with Mr. Colon, requesting that Mr. Colon appear at Section 341 meetings for Mr. Price. (In a Chapter 7 case, neither a debtor nor a debtor's attorney usually is required to appear at a court hearing unless contested matters or other "problems" arise. The only appearance required of the debtor and the attorney is at the meeting of creditors required by 11 U.S.C. § 341.) Although Mr. Price was well aware that he was not permitted to practice in the Middle District at the time of their discussions, Mr. Price did not tell Mr. Colon this fact. On November 18, 1991, Mr. Colon wrote a letter to Mr. Price memorializing their discussions. That letter detailed an "association agreement" with Michael Price, P.A.

The agreement as set forth in the letter provided that Mr. Colon was to appear at the Section 341 first meetings of creditors for Mr. Price's debtors for a flat fee of $125 per case. According to the agreement, these appearances at the first meetings of creditors was the sole purpose of Mr. Colon's relationship with Mr. Price or his professional association. Although Mr. Colon testified that this was an "employment agreement" and that he was an "employee" of the professional association, he further testified that the professional association did not withhold social security or FICA taxes from payments to Mr. Colon; that he did not maintain an office at the offices of the professional association; that his services were limited to appearances at the Section 341 meetings; and that, after those meetings, he had no obligation under the terms of the agreement to represent the debtors further.

Clearly, Mr. Colon was not an employee or a member of the professional association, nor was he a "regular associate" within the meaning of F.R.B.P. 2016(b). He was simply an independent contractor un-der a fee sharing agreement with Mr. Price or Michael Price, P.A.

F.R.B.P. 2016(b) provides that:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of compensation with a member or regular associate of the attorney's law firm shall not be required....

Mr. Colon signed and filed the statement required by F.R.B.P. 2016(b) on behalf of Michael Price, P.A. The statement discloses that the debtors paid $460 in attorneys fees to the professional association. Despite the fact that the attorney was required to disclose his fee sharing agreement, the disclosure statement filed not only fails to disclose the terms of the fee sharing agreement, but it affirmatively stated incorrectly that there was no agreement to share that compensation with any other person.

The requirement of F.R.B.P. 2016(b) to disclose fee sharing agreements is a holdover from the previous Bankruptcy Rule 219(b). The bankruptcy rules in effect before the Bankruptcy Code was enacted prohibited fee sharing agreements and provided that the court may deny compensation to a person violating that rule. Former Bankruptcy Rule 219(d). The purpose of the former prohibition of fee sharing agreements and the present requirement that they be disclosed is to avoid the natural tendency of an attorney to inflate fees to offset the diminution in compensation caused by such a fee sharing agreement. In addition, the drafters recognized that a fee sharing agreement subjects the attorney sharing fees to outside influences and may result in a transfer of control to persons with a lesser degree of public respon-

sibility. *Futuronics Corporation v. Arutt (In re Futuronics Corp.),* 655 F.2d 463, 470 (2d Cir.1981).

Mr. Colon's "association" with the professional association was plainly a ruse devised by Mr. Price to circumvent the fact that Mr. Price was not permitted to practice in the federal courts in the Middle District of Florida. If Mr. Price could have another attorney appear at the Section 341 meetings, he could continue to represent Chapter 7 debtors in this court because he could usually do so without having to make court appearances. An accurate disclosure of the fee sharing agreement as required by F.R.B.P. 2016(b) would have disclosed that Mr. Price continued to undertake to represent clients in a court where he was not permitted to appear; that Mr. Colon was utilized for the sole purpose of appearing at the first meeting of creditors; and that no one was prepared to represent the clients beyond that point in the case because Mr. Colon had no agreement to provide further services and because Mr. Price was not permitted to represent clients in this court at all.

When Mr. Colon became aware that Mr. Price was not permitted to practice in the Middle District, he terminated the relationship with Mr. Price by letter dated December 24, 1991.

Mr. Price's ruse involved the violation of other court rules, as well. Local Rule 1.08(b) and (c) (effective June 1, 1992) and former Local Rule 110(b) and (c), which was in effect when the Corbetts' petition was filed, require that counsel who files a petition on behalf of a debtor shall attend all hearings scheduled in the case or proceeding at which the debtor's attendance is required. These rules do not permit intermittent appearances of counsel except by order of the court. Among other things, these rules were adopted to serve as notice to potential counsel for debtors that they are required to provide full and complete representation to debtors before they undertake to represent them.

The Corbetts have in fact been harmed as a direct result of Mr. Price's efforts to circumvent this rule. When the Chapter 7 trustee objected to the debtors' claim of exemptions, the court entered its standard order directing the Corbetts to respond to the objection by March 12, 1992, failing which the court would sustain the objection as unopposed. If opposed, the court would then schedule a hearing on the contested matter. Despite the Corbetts' belief that they have a valid defense to the trustee's objection, neither Mr. Price nor Mr. Colon responded on the debtors' behalf. As a result, at the time of the hearing, the Corbetts were at risk of losing their claimed exemptions.

Mr. Colon testified that he had no agreement with Mr. Price's office to handle problems that arose post-petition, such as defending contested matters like objections to claims of exemption. Mr. Price was not permitted to appear on behalf of the debtors. As a result, despite paying $460 for representation, and despite the local rule forbidding an attorney who has made an appearance thereafter to abandon the case in which the appearance was made, the debtors were, in fact, abandoned and were without the assistance of counsel to assert any defenses they may have had to the objection to the claim of exemptions. See Local Rule 1.08(a) & (b) (effective June 1, 1992); former Local Rule 110(a) & (b). It is precisely that sort of harm that the fee disclosure requirement of F.R.B.P. 2016(b) and the anti-abandonment provisions of the local rules seek to avoid.

Clearly the fee paid was unreasonable for the services that were actually rendered in this case. Michael Price and Michael Price, P.A., should therefore be ordered to disgorge this excessive fee, and the court will order that the entire amount be returned to the estate.

■ Moreover, having entered his appearance on behalf of the Corbetts, Mr. Colon cannot abandon them based upon his agreement with Mr. Price to limit his involvement to attending the Section 341 meeting of creditors. Accordingly, the court will recognize Mr. Colon as the Corbetts' counsel of record and order Mr. Colon to represent the debtors unless and until relieved and discharged of those re-

sponsibilities by the court. Local Rule 1.08(a) & (b) (effective June 1, 1992); former Local Rule 110(a) & (b).

### B.

In the case of Diane and Bobby Gene Lavender, Jr., Case No. 92–01553–BKC–6C7, filed on March 17, 1992, when Mr. Price was not permitted to practice here, the petition initiating the case stated that the debtors were not represented by an attorney. At the time the debtors filed their petition, however, they filed a statement of assistance stating that they had paid $200 to Michael Price, attorney, for assistance in the preparation of their schedules and petition and that they had received legal advice from him regarding their bankruptcy. The statement further indicated that in the future Michael Price would assist the debtors with creditors by telephone and mail.

Before filing the petition, Mr. Price informed the Lavenders that he could not represent them in court as attorney of record, but he did not explain why. Mr. Lavender understood that he could call Mr. Price at a later date if he needed anything further in the case and that he would be charged for the further services that Mr. Price would provide.

The actions taken by Mr. Price on behalf of the Lavenders and the advice given clearly constitute the practice of law in the bankruptcy court in the Middle District of Florida, despite the fact that he has been removed from the roster of attorneys permitted to practice here. Mr. Price should not be permitted to profit from his violation of the order entered by Judge Black removing him from the roll of attorneys who may practice in the Middle District and, for that reason alone, he should be ordered to return the fees paid by the Lavenders for his legal services.

In addition to violating the order entered by Judge Black, Mr. Price has affirmatively harmed his clients by giving the appearance that he is able to provide legal counsel when, in fact, he cannot appear as counsel of record. For the same fee paid to Mr. Price, the Lavenders could have obtained an attorney who was able to appear on their behalf who could represent them fully and completely, and who would be bound by the rules of this court.

As discussed with regard to the Corbetts, if Mr. Price were permitted to appear in this court and had appeared as counsel of record on behalf of the Lavenders, he would have been prohibited from limiting his representation of the clients without written leave of court even if they had no ability to pay further fees. Local Rule 1.08(a) (effective June 1, 1992); former Local Rule 110(a). Because Mr. Price did not and could not enter an appearance of record, the Lavenders were denied that protection. Free of the constraints imposed on lawyers legitimately practicing in this court, Mr. Price entered into an agreement for providing legal services that severely limited the services to be rendered to his client.

Mr. Price has also given legal advice when he is not authorized to do so and has avoided the rules that are imposed upon practicing attorneys for the protection of this client as well as the public. For those reasons, any compensation for legal advice paid to Mr. Price or his professional association is unreasonable. The court will order that the entire amount be returned to the estate.

### C.

In the remaining 20 cases, some or all of the following facts were common to all of the cases:

Mr. Price appears as attorney of record in each of these cases. With few exceptions, Mr. Price accepted the representation of these debtors at a time when he was not authorized to practice in the Middle District of Florida, although he filed the cases during the brief window of time in which he was readmitted as a result of his application for admission as a new lawyer.

The debtors typically paid between $230 and $250 per person for the services to be rendered by Mr. Price. Mr. Price's terms of representation of these clients indicated that the fee included the following:

* representation as legal counsel at the bankruptcy hearing,
* preparation of papers required to file bankruptcy, and
* telephone calls from clients and creditors.

The terms of representation indicated that the following were specifically not included:

* amendments to add additional creditors,
* attendance by attorney at more than normal bankruptcy hearings,
* defense of any objections to the bankruptcy or creditor's attempts to exclude its debt from discharge,
* handling repossessions, seizures in violation of bankruptcy,
* written reminders to client about bankruptcy hearings,
* other additional services listed on the bankruptcy outline, and
* resolving garnishments or bank account seizures.

The fee agreement purports to authorize the attorney to refrain from defending or answering any objection to discharge or complaint seeking exception to the discharge unless suitable financial arrangements have been made in advance.

As discussed above, this agreement to limit the representation of a debtor in a bankruptcy case is clearly a violation of Local Rule 1.08(b) and (c) (effective June 1, 1992) and former Local Rule 110(b) and (c) which was in effect when the agreements were executed. Indeed, some of the services Mr. Price has excluded from the representation are the most important and valuable services a debtor's attorney can render in a Chapter 7 case; without them, a debtor is left defenseless at the time the debtor most needs counsel.

After the debtors retained him, Mr. Price delayed filing the petitions, in some cases up to three months, until he was admitted to practice in the Middle District of Florida on March 24, 1992, for the brief period previously described. At least nine of the parties in the remaining cases made their final payments and signed documents so that their cases could have been filed between December 21, 1991, and the end of February, 1992. Those cases and eleven others were finally filed in groups on March 31, April 1, and April 10, 1992, after Mr. Price was admitted on March 24. Although many of the clients were concerned and inquired of Mr. Price about the delays, they were not told the reason for the delay. In short, contrary to his clients' interests, Mr. Price collected his fees and then "warehoused" these cases until he was readmitted so he could file them.

The evidence reflects further harm to the debtors, as well. More than one debtor testified that Mr. Price told him that he could continue to use credit cards until Mr. Price filed the petition because that credit card debt would be discharged anyway. That advice was legally incorrect. Debts for property obtained by false pretenses are non-dischargeable in bankruptcy, 11 U.S.C. § 523(a)(2)(A), and use of a credit card without the ability or intention to repay is clearly a debt obtained by false pretenses. *Signet Bank/Virginia v. Hale (In re Hale)*, 139 B.R. 41, 43–44 (Bankr. M.D.Fla.1992); *Flint Area School Employee Credit Union v. Nogami (In re Nogami)*, 118 B.R. 846, 853–54 (Bankr. M.D.Fla.1990). If these debtors have relied on this advice, they have been affirmatively harmed.

Further, it is inconceivable that a former member of the bar who intended to seek readmission would counsel his clients to commit such illegal acts.

When Mr. Price was contacted by potential clients, he typically scheduled an appointment with the potential clients. During this initial consultation, he discussed the fee he would require for the representation and gave the potential clients information sheets that, when completed, would include the information required to fill out the clients' statements of affairs and schedules to be filed with the court. When the clients returned the information sheets and paid Mr. Price's fee in full, Mr. Price routinely requested that they sign their petitions, schedules, and lists in blank. Using the information sheets filled out by the

debtors, Mr. Price then completed the previously executed but otherwise blank petitions and schedules and ultimately filed them with the court before they were reviewed by the clients.

The official form schedules require the debtor to sign a statement under penalty of perjury that the debtor has read the schedules. Both the petition and the schedules require the debtor's statement under penalty of perjury that the information contained therein is true and correct. It was these statements that the debtors routinely executed at Mr. Price's request in blank and before the schedules and petitions were completed.

Aside from the obvious ethical questions raised by Mr. Price's request of the debtors to sign under penalty of perjury statements that are patently untrue, the debtors may be subject to affirmative harm as a result. In at least three cases, the debtors testified that they were given their completed schedules at the first meeting of creditors so that they read them for the first time after they were filed with the court. Three debtors testified that they told Mr. Price that there were creditors omitted from their schedules when they reviewed the completed documents. Rather than amending the schedules to protect his clients, Mr. Price told the clients that he would simply send letters to the creditors advising them of the bankruptcy filing. In the *Cox* and *Fore* cases, Mr. Price told the debtors to send him the information to amend the schedules. The debtors sent the information to Mr. Price, but he has failed to prepare the amendments for the debtors.

The debtors have been affirmatively harmed by these failures because, if a debtor fails to amend the schedules to list a creditor to whom a debt is owed and the creditor does not have knowledge of the case, that debt is excepted from the discharge pursuant to 11 U.S.C. § 523(a)(3).

Not only did Mr. Price fail to fulfill his obligation to amend the deficient schedules, the testimony revealed that Mr. Price gave the Coxs and Fores incorrect and damaging legal advice relating to the information to be included in the debtors' petitions. In the *Fore* case, Mr. Price advised the debtors not to list debts arising from a sole proprietorship for which the Fores were personally responsible. The debtors have been affirmatively harmed by that advice in that the Fores will not be discharged from the debts to creditors that are not listed and do not have actual knowledge that the debtors filed bankruptcy. 11 U.S.C. § 523(a)(3). In other words, these debts could have been easily discharged, but because of Mr. Price's advice they may not be discharged or the debtors may have to litigate the dischargeability issue.

Mr. Price advised Mr. Cox that he did not need to list the interest he acquired in a pension plan by virtue of a dissolution order. Such property is clearly property of the estate and must be listed in the schedules as an asset. The debtors have been affirmatively harmed by that advice in that the failure to disclose assets may constitute a false oath or account given by the debtor in connection with a case. A false oath given by the debtor in connection with a case constitutes a ground for which the discharge may be denied. 11 U.S.C. § 727(a)(4)(A).

Finally, the testimony reveals that Mr. Price consistently failed to advise his clients of the alternative forms of relief under Chapters 11, 12, or 13 of the Bankruptcy Code, as he is required to do, although he consistently stated in the petitions filed that he had done so. *See* Official Form No. 1, Ex. B; Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 322.

The facts of these cases demonstrate that Mr. Price repeatedly misrepresented his ability to represent clients in their bankruptcy cases; he impermissibly delayed filing the cases until a time he obtained readmission to the bar by deceit; he impermissibly attempted to limit his representation of debtors in violation of the local rules; he advised his clients to use credit cards when they had no intention of repayment; he caused his clients to execute blank documents stating, under penalty of perjury, that they had read the information contained in them and that it was true and

correct to the best of their knowledge and belief; and he gave incorrect and harmful legal advice.

Mr. Price's clients were affirmatively harmed by his direction to sign blank documents; his failure to amend schedules; and his irresponsible and incorrect legal advise to his clients.

Each of the cases before the court demonstrates one or more of the acts or omissions discussed above. Any one of these acts and omissions constitutes such a serious breach of Mr. Price's professional responsibility to his clients that it cannot be said that any of these debtors have received any value whatsoever from the services rendered and, in fact, some have been affirmatively harmed. Further, the majority of the services rendered were performed at a time when Mr. Price had no colorable authority to practice law in this court.

Accordingly, Michael Price and Michael Price, P.A., should be ordered to refund the entire fee paid in each case.

## IV.

■ Section 329(b) of the Bankruptcy Code provides that, if the compensation paid in connection with a bankruptcy case exceeds the reasonable value of the services rendered, the court may order the return of any such payment either to the estate, when the funds would have been property of the estate, or to the debtor, when the debtor is the person who made the payment. In each of these cases, but for the payments to Mr. Price or to Michael Price, P.A., the monies would have been property of the estate at the time the case was filed. In each of these cases, the court will therefore direct Mr. Price and Michael Price, P.A., to return to the trustee the entire payment made. Each trustee can then administer the payment in the ordinary course as an asset of the estate.

## V.

The court has jurisdiction of the parties and of the subject matter. These contested matters are "core" proceedings. This memorandum opinion constitutes findings of fact and conclusions of law as required by F.R.B.P. 9014 and 7052. In accordance with F.R.B.P. 9021, the court will enter separate final orders in each case.

DONE and ORDERED.