**In re Brian Keith SUNDERLAND,**
**Debtor.**

**Bankruptcy No. 93–02270–BKC–6C3.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

July 30, 1993.

Brian Keith Sunderland, pro se.

Richard Palmer, Winter Park, FL, Trustee.

Andrew Baron, Orlando, FL, for debtor.

## ORDER REQUIRING ADDITIONAL NOTICE TO CREDITORS DISCHARGED IN PRIOR CHAPTER 7 CASE AND REQUIRING EXAMINATION OF ATTORNEYS FEES

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This Chapter 13 case came on for hearing on July 6, 1993, of an unrelated motion. At the hearing, it became apparent that this case presents a stark example of a developing and disturbing trend toward "Chapter 20" serial bankruptcy filings. The court will therefore require the debtor to give notice of this Chapter 13 case and the proposed plan to the creditors in his prior Chapter 7 case so that they will have the opportunity to be heard on confirmation issues. In addition, because of the possibility of irregularities in the payment of attorneys fees and the filing fee, the court will also examine the circumstances surrounding the payment and the reasonableness of the attorneys fees.

## I.

The records of the clerk reveal that this Chapter 13 debtor initially filed a Chapter 7 case, Case No. 93–167–BKC–6C7, in this court on January 19, 1993. Andrew Baron, an attorney, represented the debtor. In that case, the debtor scheduled $84,000 of secured debt representing $75,000 of home mortgage indebtedness and $9,000 of automobile indebtedness; $426 in priority unsecured tax obligations owed the Internal Revenue Service for 1991 income taxes; and $18,270 in unsecured debt largely composed of credit card indebtedness. Although the debtor did not declare and perform his intentions as to the home and the car in the manner required by Section 521(2) of the Bankruptcy Code and F.R.B.P. 1007(b)(2), it appears that the debtor consented to relief from stay as to his automobile and that the secured creditor obtained the return of the car. Nothing occurred in that case as to the home. Less than a month after the case was filed, the Chapter 7 trustee reported the case as a "no asset" case. The court then entered the debtor's Chapter 7 discharge on April 27, 1993. The case is still open.

A week after entry of the discharge, on May 5, 1993, the debtor filed this Chapter 13 case. The debtor was not represented by counsel. The debtor scheduled secured debt in the amount of $75,000 representing the home mortgage; $1,300 of priority unsecured tax obligations owed the Internal Revenue Service for 1991 and 1992 income taxes; and no unsecured debt. The debtor's Chapter 13 plan proposes to cure an arrearage of $6,900 on the home mortgage at the rate of $287.50 per month over 24 months and to pay the $1,300 priority tax debt that must be paid in full pursuant to Section 1322(a)(2) of the Bankruptcy Code at the rate of $54.17 per month over 24 months. The debtor also proposes to make through the plan the $769 regular monthly payment on his home mortgage and the $200 regular monthly payment on an automobile that the debtor apparently purchased after the original automobile

was taken back by the lienholder in the first bankruptcy case.[1] The plan makes no provision for payment to the unsecured creditors the debts to whom were discharged in the previous bankruptcy case.

The debtor's income and expenses as scheduled are substantially identical in both cases. Other than the lack of unsecured debt that was discharged in the Chapter 7 case, the new car in substitution for the repossessed car, and the slightly increased priority tax debt, the schedules in the Chapter 13 case reveal no change in the debtor's circumstances from the time of the Chapter 7 case.

## II.

This case presents a dramatic example of a "Chapter 20" serial bankruptcy filing, a phenomenon that is being seen all too often in this court. "Chapter 20," of course, is the colloquial term used to describe the filing of a Chapter 13 case shortly after the filing of a Chapter 7 case.

A "Chapter 20" filing is a two step tactic designed to implement a single strategy to deal with a single set of financial problems. Under this "Chapter 20" pattern, the debtor first sheds all unsecured debt in the Chapter 7 case and then forces the reorganization of secured debt in the Chapter 13 case. The resulting benefit to the debtor, of course, is available in neither Chapter 7 nor in Chapter 13 alone. A Chapter 7 case will discharge unsecured indebtedness but provides no help in restructuring secured debt that is in default; a Chapter 13 case can force the restructuring of secured debt but requires a debtor to pay his unsecured creditors with his post-petition disposable income. By using separate cases under the two chapters in combination, however, a debtor can gain the advantages of each chapter while accepting the burdens of neither.

An example of a "Chapter 20" serial filing was recently described in *In re Caldwell*, 151 B.R. 131 (Bankr.S.D.Ohio 1992), a

---

1. Although the proposed plan includes payment of the indebtedness owed on the debtor's newly purchased car, the lienholder is not listed in the debtor's Schedule D or otherwise. This creditor has therefore not received notice of the filing of the Chapter 13 case.

decision with which this court agrees. In *Caldwell,* the court denied confirmation of a Chapter 13 case that was filed five months after the filing of a Chapter 7 case. *Id.* at 133.

In *Caldwell,* the court looked behind the filing of separate bankruptcy cases and recognized the "Chapter 20" as a single invocation of relief under the Bankruptcy Code. From this perspective, the *Caldwell* court observed, the filing of a Chapter 13 case immediately following the filing of a Chapter 7 case creates, in effect, a Chapter 13 plan with zero payments for unsecured creditors—or a "zero percentage" plan—because it effectively eliminates the debtor's obligation to his or her unsecured creditors solely by virtue of taking the bankruptcy process in two separate steps. To make matters worse, these unsecured creditors remain ignorant of this scheme because they are technically not creditors in the Chapter 13 case, the debts owed to them having been discharged in the Chapter 7 case. They therefore do not receive notice of the filing of the subsequent Chapter 13 case.

As the court wrote, the "Chapter 20" filing scheme is problematic because:

> [T]he bankruptcy process is a necessary safeguard in an economic system which is based upon credit transactions. The system spreads among credit extenders the costs of inevitable failures and provides periodic fresh starts for honest, but unfortunate, debtors. However, that system imposes responsibilities on debtors as well as granting benefits. If the benefits of Chapter 13 are desired, then the concomitant burdens must be assumed. Selecting only the benefits of

two different chapters without assuming the burdens of those choices appears to this Court to raise serious questions of good faith.

*Id.* at 132–33.

The facts of this case raise even greater question as to this debtor's good faith because the debtor appears to have, and to have had, the ability to pay the unsecured creditors but has chosen instead not to do so. Section 1322(c) of the Bankruptcy Code permits a plan of up to five years in duration.[2] Based upon the debtor's figures taken from the lists and schedules, had the debtor initially proposed a five year plan with monthly payments in the same amount as in the two year plan he now proposes, the debtor could have both reorganized his secured debt and paid a substantial portion of the unsecured debt.[3] Instead, in the Chapter 13 plan, the debtor is proposing to reorganize his secured debt by curing the $6,900 arrearage and reinstating his home mortgage and to pay the required tax debt in only 24 months while paying unsecured creditors nothing. The previous discharge of his unsecured debts allows the debtor to complete the plan and accomplish his objectives in this short period of time.

■ The immediate filing of this Chapter 13 case before the ink was barely dry on his Chapter 7 discharge, the absence of any substantial change in circumstances, and the ability to pay all or a substantial portion of the unsecured debt all call into question the good faith of this debtor and the confirmability of this plan pursuant to the provisions of Section 1325(a)(3) of the Bankruptcy Code.

Unfortunately, the circumstances presented by this case are not isolated or

---

**2.** Plans of up to five years are permitted by the Code upon the approval of the court for the very purpose of ensuring that a meaningful dividend can be paid to unsecured creditors. *In re Lindsey,* 122 B.R. 157, 159 (Bankr.M.D.Fla.1991).

**3.** In the plan the debtor is proposing, the debtor devotes $341.67 per month for 24 months to cure the home mortgage arrearage and to pay the priority tax debt. When those items are completed, the debtor could use the $341.67 per month to pay unsecured creditors. Over the three additional years the debtor has available

to use in a plan, the debtor could therefore pay $12,300, or 67 percent, of the $18,270 of unsecured debt scheduled in the Chapter 7 case. Although in some circumstances a two year delay before beginning payments to the unsecured creditors is not permissible, *e.g., In re Lindsey,* 122 B.R. 157, 159 (Bankr.M.D.Fla. 1991), a plan of that type could very well be confirmed in these circumstances. The delay in payment would diminish the value of payments to the unsecured creditors, but such a plan would nevertheless provide some dividend.

unique. They instead represent a pattern that this court has observed has been increasing in frequency. The court therefore embraces and adopts the policy announced by the *Caldwell* court to deal with the kind of problems presented by the "Chapter 20" serial filing.

In *Caldwell*, the court applied an intensified level of scrutiny in considering confirmation of the plan in any Chapter 13 case that follows on the heels of a Chapter 7 case. *Id.* at 132. The court also noted that, "absent a marked change in circumstances, the scrutiny level will increase as the interval between the two cases decreases." *Id.* In addition, the court required that all unsecured creditors discharged in the Chapter 7 case be notified of the Chapter 13 filing and of the fact that no repayment of those creditors was contemplated in the Chapter 13 plan. *Id.* This notice was afforded so the discharged Chapter 7 creditors could have an opportunity to object to confirmation in the later Chapter 13 case.

■ Accordingly, this court gives notice that it will examine closely "Chapter 20" cases for purposes of determining whether "Chapter 20" debtors have established entitlement to confirmation. In addition, this court will require that all unsecured creditors whose claims were discharged in a previous Chapter 7 case be notified of the subsequent filing of a Chapter 13 case and the debtor's plan as to those creditors.

■ The court further directs that this notice and disclosure policy shall be implemented as follows: In a Chapter 13 case the filing date of which is one year or less after the filing date of a prior Chapter 7 case, the debtor shall include in his or her schedules, lists, and the master mailing matrix the Chapter 7 trustee and all creditors who were scheduled in the prior Chapter 7 case and the debts which have been or will be discharged in the Chapter 7 case. In the plan that the debtor then proposes in the Chapter 13 case, the debtor must disclose the prior Chapter 7 case and that he

or she is proposing no payment whatsoever to those creditors whose debts have been or will be discharged in the prior Chapter 7 case.

■ Moreover, in applying these requirements, a Chapter 13 case shall be considered filed one year or less after the filing of a prior Chapter 7 case if the Chapter 13 case itself follows the filing of one or more Chapter 13 cases any one of which was filed within one year or less after the filing of a prior Chapter 7 case. Thus, in a situation where there has been a series of unsuccessful Chapter 13 cases filed following the initial Chapter 7 case, a debtor cannot avoid compliance with the policy announced here merely because the prior unsuccessful Chapter 13 case or cases have caused more than a year to elapse between the filing of the original Chapter 7 case and the most recent Chapter 13 case.

Finally, the Chapter 13 standing trustee shall implement the notice and disclosure policy announced here by ensuring that "Chapter 20" debtors have complied with the policy in connection with the process of certifying that Chapter 13 cases are ready for confirmation.

### III.

To implement further this policy in this specific case, the court makes the following additional orders:

1. The clerk is directed to add to the master mailing matrix in this Chapter 13 case the Chapter 7 trustee, the United States trustee, and all creditors and parties in interest appearing on the master mailing matrix in the prior Chapter 7 case.

2. No later than 20 days after the date of service of notice of the entry of this order, the debtor shall file and serve an amended Chapter 13 plan that complies with the policy announced here.[4] The debtor shall also serve with the amended plan a copy of the court's order establishing duties of the debtor and confirmation procedures entered on May 6, 1993, on all creditors who have not already received a

---

4. The debtor shall also amend his schedules to add the omitted creditor who has a lien on the

debtor's newly purchased car. *See* note 1, *supra.*

**44**

copy. The debtor shall use for purposes of service the new master mailing matrix after the Chapter 7 creditors and parties in interest are added. The debtor shall then promptly file a certificate of such service.

### IV.

■ The file in the Chapter 13 case also reveals a potential irregularity in the debtor's payment of attorneys fees and consequently in the payment of the filing fee. Specifically, in the debtor's prior Chapter 7 case, the debtor was represented by counsel, Andrew Baron, who disclosed receiving compensation of $200 for his services. When the debtor filed the subsequent Chapter 13 case on May 5, 1993, however, he did so on a *pro se* basis. The debtor then applied to pay the required filing fee in installments pursuant to the provisions of F.R.B.P. 1006 (Document No. 8). In his application, the debtor stated under penalty of perjury that:

> I have not paid any money or transferred any property to an attorney or any other person for services in connection with this case or in connection with any other pending bankruptcy case, and I will not make any payment or transfer any property for services in connection with the case until the entire filing fee is paid in full.

(*Id.*) The court granted this application on May 10, 1993, and required the debtor to pay installments on June 5, July 5, and August 5, 1993. (*Id.*) In that order, the court specifically directed that:

> IT IS FURTHER ORDERED that, until the entire filing fee is paid in full, the debtor shall not pay, and no person shall accept, any money for services in connection with this case, and the debtor shall not relinquish, and no person shall accept, any property as payment for services in connection with this case.

(*Id.*) *See also*, F.R.B.P. 1006(b)(3).

On May 18, 1993, and before the filing fees had been paid in full, the debtor filed his proposed plan. At the July 6 hearing, the court recognized the form of the plan as similar to plans prepared by the attorney who previously handled the debtor's Chapter 7 case. The court therefore asked the debtor to explain the circumstances surrounding the preparation of the proposed plan. The debtor responded that, although the attorney was not representing him in the Chapter 13 case generally, he did go to the attorney for specific tasks, including the preparation of the plan, and that the attorney charged, and the debtor paid, for such services on a task-by-task basis.

■ It appears, therefore, that the debtor and the attorney may have violated the provisions of F.R.B.P. 1006(b)(3) and the court's specific order. In addition, in a different context, this court has held that an attorney may not limit the scope of his or her representation of a client when the attorney represents a debtor in this court. *In re Corbett*, 145 B.R. 332, 337–39 (Bankr. M.D.Fla.1992). Although in *Corbett* the attorney had entered an appearance on behalf of the debtor, many of the same concerns expressed in that case are applicable in these circumstances where the attorney appears to be representing the debtor without entering a formal appearance or otherwise complying with the provisions of the applicable rules.

Consequently, the court will direct the Chapter 13 trustee to investigate the relationship between counsel and the debtor as regards to this case, including the circumstances, timing, and amounts of all payments by the debtor to counsel. Accordingly, the court will conduct an examination of the fees paid by the debtor to counsel and consider whatever remedy or sanction, if any, the facts may warrant at a hearing to be held on September 14, 1993, at 11:00 o'clock a.m., in Courtroom A, 5th Floor, 135 West Central Boulevard, Orlando, Florida. 11 U.S.C. § 329; F.R.B.P. 2017. The Chapter 13 trustee shall be prepared to present testimony and evidence on these issues, and the court directs Andrew Baron and the debtor to appear at the hearing.

DONE and ORDERED.