In re Karen L. CRAIG, Debtor.

Bankruptcy No. 97–15493 (MVB).

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 31, 1998.

Robert Ross Weed, Falls Church, VA, for Debtor.

Gerald M. O'Donnell, Alexandria, VA, for Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

Here we consider the objection of a creditor, Consumer Finance Corporation ("CFC") to the confirmation of the Chapter 13 plan proposed by the debtor which followed shortly after a Chapter 7 petition was filed by the same debtor. Specifically, CFC argues that the debtor should not be permitted to achieve a result through the "serial filing" of a Chapter 7 followed by a Chapter 13 that could not be accomplished by filing only a Chapter 7 or a Chapter 13 independently.[1] In the instant case, the debtor's filing of a Chapter 7 case followed directly by a Chapter 13 filing, in the view of the debtor, results in a "cram down" of the balance due to CFC. Which amounts to the current value of only the secured property in the Chapter 13 case while the unsecured portion under this view is deemed to have been discharged in the prior Chapter 7. After a hearing was held on December 16, 1997, with argument from counsel for both the debtor and CFC, this court took the matter under advisement.

On or about January 13, 1997, the debtor filed a Chapter 7 case with this court, Case Number 97–12065(SSM). The debtor was

granted a discharge on June 26, 1997 and the case was closed on July 8, 1997. The instant Chapter 13 case was filed on July 24, 1997.[2] The debtor's schedule B indicates that she owns inter alia a 1996 Toyota Tercel automobile (the "vehicle").

CFC is the holder of an installment sales contract and disclosure statement (the "Contract") dated August 15, 1996 executed by the debtor. The Contract provides for CFC to extend funds to the debtor for the purchase of the vehicle, together with mechanical repair coverage, credit life and credit disability insurance. The Contract is secured by a first lien on the vehicle and the potential proceeds of the insurance policies. The debtor's Schedule D ("Creditors Holding Secured Claims") reflects that CFC holds a secured claim against the vehicle for $13,194.00.

CFC filed an untimely proof of claim together with a motion to file proof of claim out of time and a consent order signed by counsel for CFC, counsel for the debtor and the Chapter 13 Trustee. The proof of claim asserts a secured claim in the amount of $9,630.00 and an unsecured claim in the amount of $3,563.73. An order granting the motion was signed on January 30, 1998.

On September 17, 1997, the debtor filed a motion for a Chapter 13 valuation of the collateral. Prior to a valuation hearing, the debtor and CFC stipulated to the value as of the time of the Chapter 13 as $9,630.00 which represents the NADA retail value less ten percent. Thereafter, CFC filed the instant objection to confirmation of the plan.

CFC asserts several bases for its objection. First, that the plan violates section 1325(b)(1)(B). Second, that the plan is underfunded and not feasible, which is based on two arguments, that the debtor wrongfully bifurcated the claim in the Chapter 7 case by creating a "secured" and "unsecured" portion of the lien and that only the secured portion of the lien survives the Chapter 7 discharge. Also, asserted is that on a practical level, if the lien did pass through the Chapter 7 unaffected that CFC could insist on payment

---

1. This procedure has been commonly referred to as a "Chapter 20" filing.

2. Subsequently, the case was reopened so that the debtor could redeem a lien on another automobile for $1.00. The reopening of the Chapter 7 case to deal with this single item of personal property does not affect this Chapter 13 case.

for the full amount of the debt owed by the debtor before relinquishing the title to the vehicle.

CFC further argues that any bifurcation of the claim in the Chapter 7 is contrary to case law in the Fourth Circuit. In order to accomplish a bifurcation, the debtor would be required to file an adversary proceeding to determine the validity, priority or extent of the lien so as to clarify which portion of the debt was secured and which unsecured portion was discharged in the Chapter 7 case. *See Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995). CFC further contends that the lien must have survived the Chapter 7 case unaffected which is consistent with the holding in *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (stating that in Chapter 20's, a Chapter 7 discharge discharges only personal liability of the debtor while the claim remains enforceable against collateral and is properly included in the Chapter 13 plan).

Third, CFC asserts that upon the filing of the Chapter 13, the debt to CFC was classified as unsecured for the first time and could not have been discharged in the Chapter 7 because this claim did not exist at the time of the Chapter 7 filing. CFC's position is that this unsecured claim arose purely out of filing the Chapter 13 case and that it therefore holds an unsecured claim, in that the serial filing resulted in the creation of a new class of creditors. Therefore the debtor is not free to dismiss the claims by referring back to the Chapter 7, but instead must deal with this new class of claims in the Chapter 13.

Fourth, CFC argues that the valuation was improper because the relevant date for determining the value of the vehicle is not as of the date of the Chapter 13 petition but as of the date of the Chapter 7 petition. CFC claims that the agreement between the parties concerning the value of the vehicle for the purposes of the Chapter 13 case is relevant only to determine how much is to be paid to CFC as unsecured under the plan. Additionally, the valuation does not account for the unearned premiums on the mechanical repair coverage, credit life and credit disability insurance policy, which, CFC asserts could have a potential value of as much as $1,706.32. These premiums are additional collateral for the debtor's obligation to CFC.

Fifth, CFC claims that it was not given adequate notice that the debtor intended to discharge any portion of the lien in the Chapter 7 case. Further it relied on the debtor's statement of intention in the Chapter 7 case wherein she indicated that she intended to retain the vehicle, thus misleading CFC to believe that it would be repaid the full amount of the lien.

In response to CFC's arguments, the debtor claims that the primary purpose for filing the Chapter 13 case was to deal with tax arrearages and to enable the debtor to keep her car by reducing the payments. Further, the debtor asserts that the discharge of her personal liability in the Chapter 7 and the subsequent filing of the Chapter 13 are supported by the Supreme Court decision in *Johnson v. Home State Bank,* and Code sections 502 and 506.

In a supplemental memorandum of law, CFC raises the issue of whether the plan was proposed in good faith. This additional argument was prompted by the decision *In re Cushman,* 217 B.R. 470 (Bankr.E.D.Va.1998) which CFC urges this court to adopt. Had the creditor not raised the issue of bad faith, we would have been compelled to do so *sua sponte.*

A supplemental memorandum of law was also filed by the debtor in response to CFC's supplemental memorandum and the *Cushman* decision. The debtor claims that she falls into one of the categories set forth in the case as a reason for filing a "Chapter 20". Namely, that the debtor did not have sufficient disposable income to fund a Chapter 13 plan without first discharging some debt. The debtor also argues that she has evidence to support the change in circumstance test developed in *Cushman* that would assist this court in finding that the plan was proposed in good faith, although there was no indication as to what evidence would be introduced.

We first turn to the issue of whether in a "Chapter 20" the debtor may "cram down" a lien on a vehicle to the replacement value of the vehicle in a Chapter 13 plan after all

personal liability had been discharged in a previous Chapter 7 case. If so, what is the date for determining the amount of the unsecured debt that was discharged in the Chapter 7 so as to determine the value of the collateral for the purposes of proposing a confirmable Chapter 13 plan.

In the case at bar, CFC has not asserted that the debtor wrongfully retained the collateral in the Chapter 7 case. Clearly, under the ruling of the Fourth Circuit the debtor may retain collateral after receiving a discharge without either reaffirming the debt or redeeming the collateral but merely by being current and maintaining the monthly installment payments. *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger),* 962 F.2d 345, 348–49 (4th Cir.1992).

Nor does CFC object to the procedure of a "serial filing" of the Chapter 7 followed closely by a Chapter 13. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) expressly found that "Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously had filed for Chapter 7 relief." *Id.* at 87, 111 S.Ct. 2150 (citations omitted). The Court reasoned that although the secured party may not seek to impose personal liability on the debtor because of the effect of the Chapter 7 discharge, it may nonetheless institute an in rem action to satisfy a claim of the secured party. *Id.* at 84, 111 S.Ct. 2150.

A "Chapter 20" has been described as "a two step tactic designed to implement a single strategy to deal with a single set of financial problems. Under this 'Chapter 20' pattern, the debtor first sheds all unsecured debt in the Chapter 7 case and then forces the reorganization of secured debt in the Chapter 13 case. The resulting benefit to the debtor, of course, is available in neither Chapter 7 nor in Chapter 13 alone.... By using separate cases under the two chapters in combination, however, a debtor can gain the advantages of each chapter while accepting the burdens of neither." *In re Sunderland,* 157 B.R. 39, 41 (Bankr.M.D.Fla.1993).

Furthermore, it has been stated that a "Chapter 20" must be closely scrutinized. *Downey Savings and Loan Association v.* *Metz (In re Metz),* 67 B.R. 462, 466 (9th Cir. BAP 1986), *aff'd,* 820 F.2d 1495 (9th Cir. 1987); *Gelletich v. Household Realty Corp. (In re Gelletich),* 167 B.R. 370, 378–79 (Bankr.E.D.Pa.1994); *Sunderland,* 157 B.R. at 41–43; *In re Warner,* 115 B.R. 233, 245 (Bankr.C.D.Cal.1989). The inequity involved with a "Chapter 20" filing is that the debtor is able to reap the benefits of both Chapter 7 and Chapter 13 while eliminating some of the burdens imposed by each chapter individually. *Metz,* 67 B.R. at 465; *Sunderland,* 157 B.R. at 41–42.

Similarly, in *In re Caldwell,* 151 B.R. 131 (Bankr.S.D.Ohio 1992), the court stated that "any debtor who proposes a Chapter 13 plan soon after a Chapter 7 filing must be prepared to meet all tests for confirmation in Chapter 13 on a heightened scrutiny basis...." *Id.* at 132. Further that choosing the benefits of the two chapters without assuming the burdens raises "serious questions of good faith." *Id.* at 133.

We begin our analysis on the basis of whether a claim exists and if it does, what is the amount of the claim. As stated above, *Johnson* addressed whether a secured creditor has a claim in a Chapter 13 case after a discharge is granted in a Chapter 7 case thereby discharging all of the debtor's personal liability. After concluding that a "claim" was to be given a broad definition, the court found that a "mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5). Even after the debtor's personal obligations have been extinguished, the mortgage holder retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property." *Johnson,* 501 U.S. at 84, 111 S.Ct. 2150. The Court reasoned that even though the discharge extinguished the personal liability of the debtor, the secured creditor nevertheless was still permitted to maintain an in rem action against the debtor. *Id.*

Further support was found in 11 U.S.C. § 502(b)(1) which provides that a claim is allowed if it is enforceable against the debtor or property of the debtor. 11 U.S.C. § 502(b)(1); *Johnson,* 501 U.S. at 85,

111 S.Ct. 2150. Additionally, the Court noted that under the rules of construction at 11 U.S.C. § 102(2), a " 'claim against the debtor' includes claim against property of the debtor." *Johnson,* 501 U.S. at 85, 111 S.Ct. 2150. Therefore, a "fair reading of § 102(2) is that a creditor who, like the [secured creditor] in this case, has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for the purposes of the Code." *Id.*

■ Having determined that CFC's claim survives, we then turn to the amount of the claim. Section 506(a) provides that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...." 11 U.S.C. § 506(a) (1994).

Recently, it was held that upon an analysis of section 506, "a claim enforceable only against property of the bankruptcy estate and not against the debtor personally is allowable only to the extent of the value of the collateral." *Cushman,* 217 B.R. 470, 475–76.[3] In *Cushman,* Judge Mitchell concluded that the secured creditor did "not have an allowable claim for the unsecured portion that must be included in the debtor's Chapter 13 plan. [The secured creditor's] claim is secured by the debtor's automobile and the amount of that claim is limited to the replacement cost of the collateral under § 506(a)." *Id.* We adopt this reasoning and hold that the amount of the claim is limited to the replacement cost of the collateral or, as in the case at bar, to the amount stipulated to by the parties.

■ The next issue we address is whether the plan was proposed in good faith. As indicated above, the secured creditor, CFC,

did not raise the issue of whether the plan was proposed in good faith until after the *Cushman* decision was released and thereafter urged this court to review the plan to determine whether it satisfies the good faith requirements set forth in *Cushman.*

■ The debtor bears the burden of proof as to confirmation of the plan. *Cushman,* 217 B.R. 470, 475; *In re Harrison,* 203 B.R. 253, 255 (Bankr.E.D.Va.1996). Section 1325(a)(3) provides that the plan must be proposed in good faith "and not by any means forbidden by law...." 11 U.S.C. § 1325(a)(3). Congress has not provided a definition of "good faith". Thus, out of necessity, courts have developed a variety of factors that are to be reviewed on a case by case basis. *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982); *see Hardin v. Caldwell (In re Caldwell),* 851 F.2d 852, 858 (6th Cir.1988); *Harrison,* 203 B.R. at 255; *In re Hurdle,* 11 B.R. 304, 306 (Bankr.E.D.Va. 1981) (Bostetter, C.J.).

■ *Deans v. O'Donnell* sets forth the controlling law in the Fourth Circuit concerning the requirements for "good faith" in a Chapter 13 plan. *Deans,* 692 F.2d at 972. There it was held that a totality of circumstance test must be employed on a case by case basis to determine whether a Chapter 13 plan was proposed in good faith. *Id.* A non-exhaustive list of factors was set forth by the court which are as follows:

1. The percentage of proposed repayment.

2. The debtor's financial situation.

3. The period of time payment will be made.

4. The debtor's employment history and prospects.

The evidence presented at the hearing indicated that the debtor filed the Chapter 13 case for the sole purpose of retaining possession of her car. Utilizing the non-exclusive list of factors set forth in *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982) and adding additional factors to be reviewed by the court in a "Chapter 20" context, Judge Mitchell found that the Chapter 13 plan was proposed in bad faith and denied confirmation of the plan. *Cushman,* 217 B.R. 470, 477–78.

---

3. We note, that the same day this matter was taken under advisement, Judge Mitchell took *Cushman,* under advisement. In *Cushman,* the underlying issue was also whether, in a Chapter 20, the debtor could cram down the debt owed to a secured creditor to the value of the collateral which was also an automobile. The secured creditor in *Cushman* argued that the plan had not been proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3) and therefore should be denied confirmation.

5. The nature and amount of unsecured claims.

6. The debtor's past bankruptcy filings.

7. The debtor's honesty in representing facts.

8. Any unusual or exceptional problems facing the debtor.

*Id.; see also Cushman*, 217 B.R. 470, 476–77.

■ *Cushman* added factors to be reviewed in a Chapter 20 setting for determining whether a Chapter 13 plan has been proposed in good faith. These include:

1. The proximity in time of the Chapter 13 filing to the Chapter 7 filing.

2. Whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a Chapter 13 plan.

3. Whether the two filings accomplish a result that is not permitted in either chapter standing alone.

4. Whether the two filings treat creditors in a fundamentally fair and equitable manner or whether they are rather an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code.

*Cushman*, 217 B.R. 470, 477–79.

■ In the case at bar, the debtor filed the instant Chapter 13 petition on July 24, 1997 less than one month after entry of the discharge order in the Chapter 7 case on June 26, 1997. A review of the debtor's Chapter 7 petition and Chapter 13 petition does not indicate a change in circumstance to support the necessity of filing a Chapter 13 case. Although, a "bona fide change in circumstances can justify a finding that successive filings were proper," the facts of this case do not support such a finding. *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 847 F.2d 597, 600 (9th Cir.1988). In fact, due to the discharge granted in the Chapter 7, the debtor was relieved of nearly $21,000 in unsecured debt as of the filing of the Chapter 13 plan. Additionally, the Chapter 7 petition indicates that the debtor had $2,525.61 in monthly income and $2,873.00 in monthly expenses. The debtor's position improved as of the filing of the Chapter 13 petition in that the petition indicates that the debtor has a monthly income of $2,869.44 and monthly expenses of only $2358.00.[4] Accordingly, we find that there was no change in the debtor's circumstances that would suggest that a Chapter 13 case was appropriate.

Additionally, through the Chapter 20 procedure, the debtor is accomplishing a result that is not available to her in either chapter standing alone. Here, the debtor is attempting to strip down CFC's lien to the replacement cost, however, this is expressly prohibited in a Chapter 7 case under the ruling of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). It is clear that the debtor discharged all of her unsecured debt in the Chapter 7 case including all personal liability on the debt to CFC. Now, in the Chapter 13 case she is proposing a zero percent repayment to all unsecured creditors. Under a *Deans* analysis, this plan would at least be suspect, *Deans*, 692 F.2d at 972, and under a § 1325(b) analysis would not be allowed. 11 U.S.C. § 1325(b)(B) (requiring all the debtor's projected disposable income to be used to make payments under the plan). Pursuant to the plan, the debtor has $511.00 in disposable income but is only proposing to commit $355.00 per month toward the plan.[5]

Clearly, based on the *Deans* factors, without the Chapter 7 case, this plan would not be confirmed because (a) it is proposing a

---

4. It should be noted that the petitions and schedules are the only evidence available to the court to make this determination. In her supplemental memorandum, the debtor suggests that there was a change in circumstance that prompted the Chapter 13 case and that the debtor was prepared to present evidence to that end. However, nothing further was provided to the court to support this assertion.

5. The only remaining debts that the debtor remains liable for are tax debts in the total amount of $2,469 and a remaining balance of $1,000 due to the debtor's attorney which have priority status, and the secured debt on the vehicle in the amount of $9,630.

zero percent payment to the unsecured creditors, (b) the debtor's financial situation appears stable in that the debtor has over $500 per month in disposable income and no unsecured debt, (c) the plan proposes payment over a period of 48 months without cause being shown to extend the statutorily imposed limit of 36 months, (d) the debtor enjoys steady employment, (e) the debtor has no unsecured claims, (f) this case is the second of two filings within nearly 6 months and (g) the debtor has no identifiable unusual or exceptional problems.[6]

Finally, and most compelling, the debtor is attempting to treat CFC in a fundamentally unfair and inequitable manner. At least one court has held that "a good faith analysis often comes down to whether the case filing or the plan proposal 'is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions.'" *Cooper v. Rogers Used Cars (In re Cooper)*, 1995 WL 495987 (Bankr. W.D.Tenn. Aug. 9, 1995) (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992)). Both *Cushman* and *Cooper* denied confirmation of the proposed Chapter 13 plan because, *inter alia*, it impermissibly crammed down the creditors' liens which, the courts found treated the creditors unfairly and was in direct conflict with the spirit of the Bankruptcy Code. The debtor expressly stated that one of two reasons for filing this Chapter 13 was to retain her vehicle by reducing the monthly payments to CFC. The other reason was to deal with outstanding tax debt. Neither of these are compelling reasons to permit the cramming down of the lien on the only secured creditor.

█ Further, as stated above, a "Chapter 20" is to be scrutinized closely by this court. *Gelletich*, 167 B.R. at 378–79; *Sunderland*, 157 B.R. at 41–43; *Caldwell*, 151 B.R. at 132; *Warner*, 115 B.R. at 245; *Metz*, 67 B.R. at 466. Upon careful examination, we find that this plan if confirmed, would permit the debtor to accomplish in two separate filings something that she would not be able to accomplish in one filing alone and would treat the only secured creditor unfairly. The proximity in time, less than one month between the discharge in one bankruptcy case and the filing of another and the virtual unchanged circumstances of the debtor leads this court to conclude that the plan was not proposed in good faith.

Based on the reasons stated above, we conclude that CFC's remaining arguments do not warrant discussion. After a careful review of the parties arguments and the relevant case law, the objection to confirmation is sustained.

---

6. We are unable to assess the debtor's honesty in representing the facts because *no testimony was*  given by the debtor.