**In re Jamie Leon BROWN, Tanya Jeanette Clontz Brown, Debtors.**

**Bankruptcy No. 7–99–02782–WSA–13.**

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

Jan. 21, 2000.

---

604

## MEMORANDUM OPINION

WILLIAM F. STONE, Jr., Bankruptcy Judge.

The matter before the Court in the confirmation of the Debtors' Amended Chapter 13 Plan. A combined confirmation and evaluation hearing was held on November 22, 1999. Heilig–Meyers Corporation, d/b/a Heilig–Meyers Furniture Company, the holder of a secured claim for certain furniture and household appliances sold by it to the male Debtor, filed an objection to the original Plan on the following grounds:

1. that the value of its collateral is worth more than the $1,500 amount proposed by the Debtors in their Plan;

2. that the Plan did not propose any payment to unsecured creditors; and

3. that the time period (60 months) for paying this secured claim is too long.

The original Plan did provide for a zero payment for unsecured claims, but the Amended Plan provides for a 4.50% payment to unsecured creditors. The Trustee has represented to the Court that this constitutes the maximum amount which the Debtors can realistically devote payments under the Plan.

At the confirmation hearing, the Debtors and their counsel appeared. Heilig–Meyers appeared by counsel. At the hearing counsel for Heilig–Meyers stated his client's objection to confirmation as follows:

1. that "as a matter of law ... the Debtors' Plan cannot be confirmed as to paying 25 percent of the cost basis of the furniture even on a depreciated basis";

2. that to pay the creditor over 60 months would be for a period of time longer than a reasonable life for the furniture and appliances which they purchased; and

3. that if the Debtors were to pay Heilig–Meyers directly rather than through the Trustee, approximately $1,800 could be paid to the Trustee for the benefit of the unsecured creditors.

At the combined confirmation and valuation hearing, Mrs. Brown testified without objection that she valued the furniture and appliances in question as being worth $1,500. Mr. Brown did not testify although the contracts which were introduced into evidence on behalf of Heilig–Meyers indicated that he was the purchaser of all the property in question. No evidence was offered that he had transferred any interest in this property to Mrs. Brown. However, the Debtors' bankruptcy petition signed by them both indicated that all of their household personal property, including those items subject to Heilig–Meyers' security interest, was jointly owned. Although counsel for Heilig–Meyers cross-examined Mrs. Brown, he presented no witnesses in its behalf despite the fact that Heilig–Meyers claimed in its objection that its internal appraisals valued the subject property as being worth more than $3,000. Its proof of claim asserts a secured claim in the amount of $4,794.19. No objection to this proof of claim has been filed.

In their petition the Debtors valued their living room and bedroom furniture and stove and refrigerator subject to the security interest of Heilig–Meyers at $1,500. Mrs. Brown offered testimony to the same effect. Mrs. Brown also testified in detail concerning the effect of use and general wear and tear upon the property in question. When asked by her counsel how she arrived at the $1,500 figure, she testified as follows:

A. I looked at it like it—. Because I go to yard sales a lot. And I looked at it like if I was going to buy that, what

would I want to pay? (Hearing, Transcript p. 13)

She subsequently testified in response to the Court's questioning as follows, however:

Q. Of the furniture and appliances that you have, what do you think they could be purchased for.... property of a similar age and similar condition? What do you think you could go out and buy them for?

A. Probably the $1,500 if—. Probably less than that, because of the condition of some of the things `that we have. Because it is hard to sell items that have been used. Especially like the bedroom suit with the mattresses and so forth, if is pretty much impossible to sell stuff like that that has been used.

Q. What was the purchase price of the stove?

A. It was $599.

Q. And you filed this case in August of this year. At that time what do you think you could have gone out and bought a stove of that age and condition for?

A. In.....when, sir?

Q. When you filed in August of this year?

A. I don't know. Probably $75.

(Hearing, Transcript p. 32, 33.)

Although counsel for the Debtor indicated to the Court that she had offered to have Heilig–Meyers come out to view the property, no one had done so. (Hearing, Transcript p. 5) Counsel for the Debtors also made clear that the $1,500 valuation was not intended to include the gas grill, the purchase contract for which was Heilig–Meyers' Exhibit No. 2, and which counsel indicated that the Debtors were willing to surrender to the creditor. (Hearing, Transcript, p. 33, 39)

Counsel for Heilig–Meyers acknowledged that counsel for the Debtors had made the furniture available for appraisal,

... but we did not take the opportunity to look at this furniture. And my witness with me today doesn't feel comfortable giving the Court guidelines or frames .... guidance as to what the industry (sic) might be without having looked at this.

So that is the reason we did not put on any evidence and only used Ms. Brown's testimony.

(Hearing, Transcript p. 37)

Mrs. Brown and her testimony did not provide any specific comparables of what similar items had sold for in yard sales with which she was familiar. Neither was she able to offer an itemized valuation of specific items or provide any supporting data for how she arrived at the $1,500 valuation.

### Findings of Fact

The male Debtor, Mr. Brown, purchased various items of furniture and appliances from Heilig–Meyers as follows:

| Date of Purchase | Description | Original Purchase Price |
|---|---|---|
| 02/02/1998 | Living room furniture consisting of sofa, loveseat, recliner chair, tables & lamp | $1,585.92 |
| 10/13/1998 | 19 cubic foot refrigerator with ice maker kit and 2-yr. service agreement | 774.89 |
| 12/08/1998 | Bedroom furniture consisting of bed headboard, triple dresser mirror, mattresses and box springs, incl. fabric protection | 1,770.18 |
| 02/10/1999 | Smooth top range with 2 yr. service agreement | 689.94 |

The Debtors' Chapter 13 petition was filed with the Court on August 17, 1999. Most of the items in question had suffered various small casualties which would make them "used" in appearance as well as in fact. While the Court will not detail this wear-and-tear, it does accept the testimony of Mrs. Brown as to such matters, finding such testimony to be both credible and uncontradicted.

For the reasons stated hereafter under Conclusions of Law, the Court makes no finding of fact as to the value of the prop-

erty subject to Heilig–Meyers's security interest.

### Conclusions of Law

Before considering the key issue of valuation, the Court wishes to address the other issues raised by Heilig–Meyers.

■ The contracts in question all relate to the sale of, and retention of a purchase money security interest in, items of tangible personal property. Accordingly, the rights of the creditor may be modified, 11 U.S.C. § 1322(b)(2), and any default may be cured, 11 U.S.C. § 1322(b)(3). The original obligations to Heilig–Meyers are not being maintained and cured within the meaning of § 1322(b)(5), which provides "for the curing of any default within a reasonable time and maintenance of payments while the case is pending", but are being entirely replaced by a new obligation equal in present value to the secured portion of the allowed claim and payable over the life of the plan. Therefore, providing for payment of Heilig–Meyers over a period of sixty months is permissible. Moreover, Heilig–Meyers offered no evidence as to the useful life of the furniture and appliances in issue.

■ Heilig–Meyers suggests that payments upon all secured debt owed to it be paid directly by the Debtors and that the balance be paid to the Trustee for the benefit of the general unsecured creditors, of which it would be one for the unsecured portion of its claim. The savings would be on the Trustee's commission. The savings resulting from payment to Heilig–Meyers only would be relatively nominal and not worthwhile in the Court's judgment. Furthermore, the Court does not believe it is appropriate to encourage or permit payment "outside" of the Plan of an entirely modified obligation payable to a partially secured creditor. The rights of such a creditor are entirely contained in the confirmed Plan and accordingly are different than those of a fully secured creditor whose original contractual payments are being maintained during the life of the Plan. Whether payments to such a fully secured creditor with an unmodified obligation would be appropriate "outside" of the Plan payments is not necessary to decide here.

The Court finds that the Debtors have established "cause" under 11 U.S.C. § 1322(d) for a plan period of five years.

■ Now to the subject of valuation. A threshold and in this case critical question is whether the Debtor or the creditor has the burden of proof on the issue of collateral valuation in a Chapter 13 Plan which seeks to "cram down" a collateral value which is less than the amount of the creditor's claim. Indeed the decision of this case hinges on whether the Debtors have or the creditor has the burden of proof on this issue of valuation. Determining such value is necessary because the partially secured creditor must receive the present value of what its collateral was worth on the date the petition was filed. *In re Allen,* 240 B.R. 231, 236–37 (Bankr. W.D.Va.1999). As a general matter the debtor has the burden "to prove that a proposed plan complies with Chapter 13." *In re Stewart,* 172 B.R. 14, 15–16 (W.D.Va. 1994) (Williams, J.), *Accord, In re Craig,* 222 B.R. 266 (Bankr.E.D.Va.1998); *Russell,* Bankruptcy Evidence Manual § 301.78 at pages 470–71 (West 2000 edition). The burden is by a preponderance of the evidence, not by a "clear and convincing" evidentiary standard. *See Matter of Briscoe Enterprises, Ltd., II,* 994 F.2d 1160 (5th Cir.1993), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993) (Chapter 11 Plan confirmation); 7 Collier on Bankruptcy § 1129.02[4] at pages 1129–22 thru –23 (15th ed. rev.); *But see U.S. v. Woodway Stone Co., Inc.,* 187 B.R. 916, 918 (W.D.Va.1995) ("clear and convincing") and *In re Birdneck Apartment Assocs., II, L.P.,* 156 B.R. 499.507 (Bankr.E.D.Va. 1993) (also "clear and convincing"). In this case the same result would follow if the higher burden of proof were placed upon the Debtors. There have been a

number of cases, however, which have held that a creditor which files an objection to confirmation of a plan thereby assumes a burden to establish its objection. *See In re Holmes*, 225 B.R. 789 (Bankr.D.Colo. 1998) ("a creditor has an affirmative obligation to object to confirmation of a plan if such creditor believes the plan inadequately provides for its claim and the creditor must be prepared to offer evidence at the confirmation hearing in support of its claim". 225 B.R. at 793) (The issue in dispute in the *Holmes'* case, however, was not collateral valuation but the much different issue of the amount and reasonableness of the secured creditor's attorney's fees and costs.) *(Accord* as to this specific issue, *In re Dixon*, 228 B.R. 166, 178 (W.D.Va.1998) (Jones, J.)); *In re Segura*, 218 B.R. 166 (Bankr.N.D.Okla.1998) (challenge to debtor's good faith and proposed cram down rate of interest); *Matter of Verdunn*, 160 B.R. 682 (Bankr.M.D.Fla. 1993) (challenge to debtor's good faith); *In re Blevins*, 150 B.R. 444 (Bankr.W.D.Ark. 1992); and *In re Mendenhall*, 54 B.R. 44 (Bankr.W.D.Ark.1985). The *Blevins* case, *supra*, held that a creditor objecting to confirmation of a Chapter 13 Plan on the ground that it failed to pay the creditor the value of its collateral had the burden of proof on the question of the collateral's value. 150 B.R. at 446. *See Russell*, Bankruptcy Evidence Manual § 301.78 at pages 472–73 (West 2000 edition). For the reasons noted below, this Court believes that the *Blevins* opinion is wrong.

The difficulty of answering the question posed, i.e., whether the creditor or the debtor has the burden of proof on the issue of collateral valuation in a Chapter 13 "cram down" case, is that it lies at the intersection (or perhaps collision) of three often noted general principles, namely:

■ 1. The debtor as the plan proponet has the burden of proof as to compliance with Chapter 13 requirements. *In re Stewart, supra;*

■ 2. A party objecting to plan confirmation bears the burden of proof as to its objection. *In re Segura, supra,* and other cases cited above; and

■ 3. Although a properly executed and filed proof of claim is prima facie evidence of the validity and amount of the claim (Bankruptcy Rule 3001(f)), once the objecting party submits sufficient evidence to place the claimant's entitlement in issue, the ultimate burden of proof or persuasion is upon the creditor to establish its claim. *See Russell*, Bankruptcy Evidence Manual § 301.50 at page 419 (West 2000 edition); *In re Harrison*, 987 F.2d 677 (10th Cir. 1993); *In re Tidewater Memorial Hospital, Inc.*, 106 B.R. 885 (Bankr.E.D.Va. 1989).

Usually a case is decided upon one or the other of these principles and it is unusual for one opinion to state two or more. A recent decision of the United States Bankruptcy Court for the Northern District of Ohio, however, noted two of them in the same paragraph:

A Debtor seeking reorganization under Chapter 11, 12 and 13 has the burden of establishing that the plan complies with the statutory requirements for confirmation. [citation omitted] However, a party objecting to confirmation bears the burden of proof as to the objection. [citation omitted]

*In re Petrella*, 230 B.R. 829, 832 (Bankr. N.D.Ohio 1999). The potential conflict between the two principles noted in the *Petrella* opinion is highlighted if the objection to confirmation is simply stated as a denial that the proposed plan complies with one or more of the statutory requirements for confirmation.

Neither the Bankruptcy Code nor the Bankruptcy Rules specify which party has the burden of proof on collateral valuation in the context of Chapter 13 Plan confirmation. In contrast, the Code expressly provides that a creditor seeking relief from the automatic stay under Code § 362 "has the burden of proof on the issue of the

debtor's equity in property". 11 U.S.C. § 362(g)(1). Accordingly, if Heilig–Meyers had filed a motion for relief from the stay, it would have had the burden of proving that the Debtors had no equity in the collateral, i.e., that the collateral was worth less than the balance of the debt. The Bankruptcy Rules also expressly provide that a creditor has the burden of proof on an objection to the Debtor's claim of exemptions [Rule 4003(c)] and upon an objection to the debtor's discharge [Rule 4005].

■ In the context of collateral valuation for Plan confirmation purposes where the debtor proposes to retain the collateral, however, the economic incentives motivating the parties are reversed from those present in a creditor's relief from stay motion. The creditor wants the highest valuation possible in the Plan because that will maximize its recovery under the Plan. The debtor wants the lowest valuable possible because his payments into the Plan must absolutely be enough to provide to the holders of the allowed secured claims the present value of such claims. Procedurally, the question of valuation could be raised in at least two different ways. First, the debtor or Chapter 13 Trustee could file an objection pursuant to Bankruptcy Rule 3007 to the creditor's proof of claim on the ground that it is only partially secured. The hearing on this objection would by necessity determine the value of the security. Second, but more in accord with the intended workings of the Rules, either party might file a motion pursuant to Rule 3012 to determine "the value of a claim secured by a lien on property in which the estate has an interest". The Court feels that it is evident that the question of which party has the burden of proof on property valuation shouldn't depend on which of them files the valuation motion or whether procedurally the question is raised by a valuation motion or an objection to the creditor's proof of claim. Under the language of the Chapter 13 Plan provided to

creditors in this case, the valuation of a secured creditor's collateral allegedly worth less than the creditor's claim was to be heard pursuant to Rule 3012 at the confirmation hearing.

The Court is required to confirm a Chapter 13 Plan if the six requirements of Bankruptcy Code § 1325(a) are met and no objection regarding the Debtor's disposable income is made pursuant to section 1325(b). Most often highlighted of these requirements is that of "good faith". These six requirements are the ones upon which the debtor has the burden of proof because he is the proponent of the plan. Among these six requirements is that the holder of "each allowed secured claim" receive cash payments or other property having a present value equal to "the allowed amount of such claim". 11 U.S.C. § 1325(a)(5)(B)(ii). In order to determine such allowed amount, the value of the collateral must be determined. The Court believes therefore that the debtor has the burden of proof on the issue of collateral valuation. If no creditor objects, the debtor has the equivalent of a default judgment on this issue and the case may proceed to confirmation based on the representations under oath contained in the petition and without additional evidence. If the creditor does object, however, the debtor is in effect "put to its proof" and is obligated to produce satisfactory evidence. If the debtor has the burden of proof on this issue, it cannot be shifted to the creditor upon the proposition that a party objecting must establish its objection. *See Tillman v. Lombard,* 156 B.R. 156 (E.D.Va.1993) (Smith, J.). ("The interposition of an objection to confirmation surely does not relieve the Chapter 13 debtor from the ordinary burden of proving the right to bankruptcy relief." 156 B.R. at 159.) Judge Smith's analysis in the *Tillman* case impresses the Court as being sensible and correct because to hold otherwise results in a "Catch 22" situation where the debtor has the burden of proof to establish compliance with Chapter 13 requirements except in those situations

where a creditor actually denies that such requirements have been met.

The *Blevins* case, *supra,* discussed above followed the earlier *Mendenhall* decision, *supra,* which dealt with the different issue of an objection under Code § 1325(b) that all of the debtor's disposable income was not dedicated to the Plan. This is not a requirement under § 1325(a) and is not a requirement of a confirmable Chapter 13 Plan if neither the Trustee nor any creditor objects. Even if *Mendenhall* was correctly decided, and for a contrary result see *In re MacDonald,* 222 B.R. 69 (Bankr.E.D.Pa.1998), this Court respectfully concludes that *Blevins* is wrong because the issue of collateral valuation is a necessary part of one of the six requirements for plan confirmation under § 1325(a). If the debtor contends that the value of a creditor's collateral is worth less than the amount owed to that creditor, in the context of a situation where the debtor in effect is acquiring or retaining that collateral at a price equal to the value set out in the Plan, it is entirely fitting and proper that the debtor should have the burden of proof to establish such value, especially where, as in this case, the creditor's claim is for the purchase money of the collateral in question.

A proof of claim, duly executed and filed, constitutes "prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f). The Court doubts for reasons articulated in the next paragraph, however, that it serves as affirmative evidence on the creditor's behalf of the value of any security for the payment of such claim. For a contrary view, *see In re Be-Mac Transport Co., Inc.,* 83 F.3d 1020, 1026 (8th Cir.1996) and *In re Britt,* 199 B.R. 1000, 1012 (Bankr.N.D.Ala.1996). Even if it does have such effect, the Court finds that the Debtors' evidence was sufficient to put such valuation in issue and overcome the prima facie weight accorded to a proof of claim. In either event the Debtors clearly satisfied any obligation to "go forward" with evidence on this point.

As suggested above, the Court is of the opinion that a valuation of the creditor's collateral securing an admittedly valid debt is different in kind than an issue of the debt's or the security interest's very validity. For example, if the debtor makes some showing that it has no liability to the creditor [e.g., the creditor's claim is actually against my spouse, not me], or that the security agreement is void [e.g., it describes the wrong property], then the creditor has and should have the burden of establishing that it truly does have a legally enforceable claim against the debtor and his property. The creditor would have exactly the same burden of proof in a state court enforcement action outside of bankruptcy. If the validity of the claim or the security interest is not disputed, however, the creditor may enforce it outside of bankruptcy by foreclosing on the collateral and letting the market establish its value, subject ordinarily to the creditor's right, at least in the context of a public sale, to bid at the sale to protect its interest. Similarly, outside of bankruptcy and in the absence of some agreement to the contrary, the creditor may retain its lien against the collateral prior to foreclosure until its claim has been paid in full without regard to the "value" of the collateral asserted by the debtor. In other words, unless the parties have otherwise agreed, the debtor cannot compel the creditor to release its lien except by paying the debtor in full. In a Chapter 13 case, however, and outside of the special situation presented by a claim secured only by real property constituting the debtor's principal residence [11 U.S.C. § 1322(b)(2)], the debtor may compel the release of the creditor's security interest upon payment of only the value determined by the Court of the creditor's interest in the property with interest. [For a debtor's right to redeem certain types of personal property for cash in a Chapter 7 case, *see* 11 U.S.C. § 722.] Accordingly, because the creditor's rights are being reduced or eliminated, it seems ap-

propriate that the burden of proof in such a situation should be placed upon the party benefitting from the process, i.e., the debtor.

A slightly different situation was presented to the United States Bankruptcy Court for the Eastern District of New York in the case of *Matter of 183 Lorraine Street Associates,* 198 B.R. 16 (E.D.N.Y.1996). In that Chapter 11 case another creditor rather than the debtor objected to a mortgagee's proof of claim asserting a fully secured claim in the amount of $5.2 million. The Court held that its claim having been objected to, the mortgagee "had the burden of persuasion as to the validity and amount of its claim." 198 B.R. at 27. Without undertaking the effort to compare in detail that decision with the holding of this case, the Court notes that somewhat different considerations may be presented where a party other than the debtor is challenging the creditor's asserted valuation of the collateral. In short, the case is distinguishable on the facts. The *183 Lorraine Street Associates* opinion adopted the analysis of the United States Court of Appeals for the Tenth Circuit in the case of *In re Harrison,* 987 F.2d 677 (10th Cir.1993). There a mortgagee filed a proof of claim as fully secured but later contended that it was entirely unsecured. While the Court disposed of the mortgagee's contentions by holding that the creditor's proof of claim, which was not amended or supplemented, was binding upon it, the court went on to state that if an objection to the proof of claim had been filed, the mortgagee would have had the "burden of persuasion as to the validity and amount of its claim." 987 F.2d at 681. The Court's holding that the mortgagee, having filed a fully secured proof of claim, was obligated either to file an amended proof of claim or a valuation motion pursuant to Bankruptcy Rule 3012 to change its status, does not therefore stand for the proposition that a creditor which consistently claims a fully secured

position bears the burden of proof at a valuation hearing.

While much of the above discussion would be applicable to the valuation of any secured party's collateral, the Court's holding is limited to a purchase money security interest. In that situation the debtor having acquired the property in question at an original price attempts to retain it at a lower price, often one much lower than the parties originally agreed to. In such a situation it seems more fair to place the burden of proof to establish that new value upon the debtor. It is not necessary or appropriate in this opinion to opine on the proper placement of that burden in a non-purchase money security interest or other lien. That decision should await a case having facts which squarely present the issue.

▆▆▆ In this case the only evidence (other than the original contracts themselves) before the Court on the valuation of the furniture and appliances which the Debtors wish to retain is the testimony of Mrs. Brown. While the testimony has been challenged, it has not been contradicted. In the absence of any evidence contrary to the Debtors' assertion in their Petition that the property in question is now owned by them jointly, the Court will treat Mrs. Brown as an owner of the property. It is generally, if not universally, accepted that an owner of property may testify as to his or her opinion of such property's value without demonstrating any additional qualifications to give opinion evidence. *Justice v. Pennzoil Co.,* 598 F.2d 1339, 1344 (4th Cir.1979); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690 (5th Cir.1975); *Neff v. Kehoe,* 708 F.2d 639 (11th Cir.1983); *Haynes v. Glenn,* 197 Va. 746, 91 S.E.2d 433 (1956). "In the absence of other evidence, the testimony of an owner may be conclusive, if it is credible." *In re Chelten–Stenton Seafood, Inc.,* 1989 WL 62106 (Bankr.E.D.Pa.1989). In any event such testimony was received without objection and the Court is entitled to give it such weight as it determines

appropriate. Federal Rule of Evidence 103(a)(1).

■ Counsel for Heilig–Meyers has invited the Court to adopt a "rule-of-thumb" for valuation of used furniture and appliances based on a standard percentage discount against original purchase price and proportional to the time of usage. The Court declines to do so for two reasons. First, no evidence was offered by Heilig–Meyers to provide a basis for the adoption of any such rule. Second, the Court believes that the wide variety of factual circumstances which impinge upon the valuation of such property would make the results of such a rule inaccurate in many individual cases. In the Court's mind determinations which take account of the circumstances of each particular case are more important than the administrative convenience which such a rule-of-thumb would offer. While this may result in more hearings on such issues, the Court is confident that as a practical matter in most cases the parties will agree on appropriate values, for reasons of time and expense if for no other ones, and in cases where they disagree, to resolve such disagreements is part of the Court's function.

■ To have the burden of proof by a preponderance of the evidence means the obligation to present evidence that makes the fact in issue "to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind ... of the tribunal notwithstanding any doubts that may still linger there." *Northern Virginia Power Co. v. Bailey,* 194 Va. 464, 73 S.E.2d 425, 429 (1952), quoting from *Sargent v. Massachusetts Accident Co.,* 307 Mass. 246, 29 N.E.2d 825, 827 (1940). *See also Wigmore on Evidence* § 2498 (Chadbourn rev.1981). The Court feels that it should explain why it has concluded that Mrs. Brown's testimony that the property is worth $1,500, which in effect is uncontradicted, does not

suffice to establish such valuation by a preponderance of the evidence. Even though her testimony as to valuation is admissible, it should be subject to the same type of critical analysis as would the testimony of an independent "expert". Mrs. Brown was unable to provide any detailed explanation of how she arrived at a lump sum value of $1,500 for the property in the aggregate. She either had not prepared an individual valuation of the items in question or was not prepared to introduce it at the hearing. She did not testify as to any specific values that she had found at "yard sales" for items similar in quality and condition to the ones purchased from Heilig–Meyers. The only individual item which she undertook to value in response to the Court's questioning was $75 for the stove purchased just over six months prior to the filing date at a price, including service agreement, of $689.94. The Court considers this answer not to be credible and actually not really consistent with her aggregate valuation figure of $1,500. If she had had more time to think about it, she probably would have given a more realistic figure, but this response indicates the less than satisfactory demonstrated factual basis for her testimony. It is not so much that the Court considers the $1,500 figure to be clearly wrong but more that at the end of the day the Court is simply left with the feeling that $1,500 was a figure just pulled out of the air. In short, Mrs. Brown's testimony concerning the reasonable value of the furniture and appliances was not nearly of the same detailed and credible nature as the evidence that she offered concerning such's property's condition. Therefore, the Court has decided that such testimony was insufficient to establish in the Court's mind an "actual belief ... derived from the evidence" as to the validity of the valuation opinion and thereby carry the Debtors' burden of proof. Accordingly, confirmation of the proposed Plan will be denied

without prejudice. An order to such effect will be entered contemporaneously.