In re Ikechukwu MacDonald ENE-WALLY; In re Uzoamaka B. Enewally, Debtors.

Ikechukwu MacDonald Enewally; Uzoamaka B. Enewally, Appellants,

v.

Washington Mutual Bank, Appellee.

In re Uzoamaka B. Enewally, Debtor.

Washington Mutual Bank, Petitioner–Appellant,

Ikechukwu MacDonald Enewally, Respondent–Appellee,

v.

Uzoamaka B. Enewally, Respondent–Appellee,

and

Ikechukwu MacDonald Enewally, Debtor.

Nos. 02–57119, 02–57151.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 2004.

Filed May 27, 2004.

1166

Thomas G. Kemerer, Law Offices of Stephen M. Taylor, Long Beach, CA, for the appellants/cross-appellees.

Alan S. Wolf, The Wolf Firm, Newport Beach, CA, for the appellee/cross-appellant.

Before: CANBY, JR., RYMER, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

In this appeal, we consider whether a Chapter 13 bankruptcy plan may provide for dividing a loan into secured and unsecured claims, commonly referred to as "lien stripping," with the debtor satisfying the secured claim beyond the life of the Chapter 13 plan. We conclude that this type of plan is not permitted under Chapter 13 of the Bankruptcy Code, and we affirm the judgment of the district court.

I

In 2000, Ikechukwu and Uzoamaka Enewally filed a joint voluntary petition for Chapter 13 bankruptcy and an accompanying Chapter 13 plan. In their schedules, the Enewallys listed a fee interest in three properties: their residence in Norwalk, California, and two rental properties in Long Beach, California. The property at issue in this case is located at 3380 Andy Street in Long Beach ("the Andy property"). The Enewallys' bankruptcy schedules stated that the Andy property had a value of $210,000, encumbered by a $245,023 first deed of trust held by Washington Mutual Bank ("Bank"). Thus, according to the bankruptcy schedules, $35,023 of the Enewallys' debt to the Bank was unsecured.

Under the debtors' initial and First Amended Chapter 13 plans, the Bank was to receive regular payments pursuant to the loan terms. Prior to confirmation of their amended Chapter 13 Plan, the debtors filed an adversary complaint against the Bank seeking a judgment valuing the Andy property at $210,000. The complaint also sought to bifurcate the loan into se-

cured and unsecured claims pursuant to 11 U.S.C. §§ 506(a), 1322(b)(2), with $30,744.33 of the Bank's debt deemed unsecured. Before entering judgment on the adversary complaint, the bankruptcy court confirmed the amended plan.

In the adversary proceeding, the debtors sought to maintain the contractual monthly payments on the reduced secured balance with interest, while disposing of the unsecured balance through their confirmed Chapter 13 plan. To achieve that end, the debtors filed a motion to modify the confirmed plan. The motion sought to insert a provision advising creditors of the proposed loan modifications asserted in the adversary proceeding. The motion also explicitly noted that no financial changes to the confirmed plan were desired. The bankruptcy court granted the Enewallys' motion to modify their Chapter 13 plan on the condition that they prevailed in the adversary proceeding.

The debtors filed a motion for summary judgment in the adversary proceeding, supported by an affidavit signed by Ikechukwu Enewally expressing his opinion that the fair market value of the Andy property was $210,000. No other evidence was tendered to the bankruptcy court on valuation by any party.

After holding three hearings, the bankruptcy court granted summary judgment to the debtors. The bankruptcy court valued the Andy property at $210,000 because it was "the stipulated value of the property." The court required the debtors to make monthly payments on the $210,000 secured portion of the loan, pursuant to the original loan terms, and to pay 17% of the unsecured claim throughout the life of the plan, the remainder to be discharged upon successful completion of the Chapter 13 plan. Final judgment was entered, and the Bank timely appealed to the district court. The district court reversed the determination that the debtors could repay the bifurcated loan over a term in excess of five years, holding that the bankruptcy court's opinion was inconsistent with *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The district court affirmed the bankruptcy court's valuation of the Andy property at $210,000, based on the undisputed valuation affidavit. The debtors timely appealed the judgment of the district court, and the Bank timely cross-appealed.

II

The Bankruptcy Reform Act of 1978 ("Bankruptcy Code"), Pub.L. No. 95–598, 92 Stat. 2549 (1978), effected important changes in the treatment of secured creditors in bankruptcy proceedings. One of the most significant changes, codified in 11 U.S.C. § 506, describes how secured status is to be determined. This section effectively "abolishes the use of the terms 'secured creditor' and 'unsecured creditor' and substitutes in their places the terms 'secured claim' and 'unsecured claim.' " H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 356 (1977) *reprinted in* 1978 U.S.C.C.A.N. 6312.[1] Under the Bankrupt-

---

1. The full text of 11 U.S.C. § 506 is as follows:

 (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

 (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection

cy Code, a secured loan may be separated into two distinct claims: a secured claim for an amount equal to the value of the security, and an unsecured claim for the difference, if any, between the amount of the loan and the value of the security.[2] 11 U.S.C. § 506. As the Supreme Court explained in *Dewsnup v. Timm,* 502 U.S. 410, 414–15, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), one possible interpretation is that:

> under § 506(a), a claim is secured only to the extent of the judicially determined value of the real property on which the lien is fixed, a debtor can void a lien on the property pursuant to § 506(d) to the extent the claim is no longer secured and thus is not "an allowed secured claim." In other words, § 506(a) bifurcates classes of claims allowed under § 502 into secured claims and unsecured claims; any portion of an allowed claim deemed to be unsecured under § 506(a) is not an "allowed secured claim" within the lien-voiding scope of § 506(d).

Indeed, a number of courts have acknowledged that the plain language of § 506(d) indicates that an undersecured lien is void to the extent that it exceeds the value of the collateral. *See, e.g., Crain v. PSB*

*Lending Corp. (In re Crain),* 243 B.R. 75, 77–78 (Bankr.C.D.Cal.1999). However, the Supreme Court in *Dewsnup* held that a lien was not void to the extent that the loan was undersecured, but rather the lien securing the entire amount of the loan survived a Chapter 7 bankruptcy undisturbed. The Court explained stating:

> Therefore, we hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502.

502 U.S. at 417, 112 S.Ct. 773.

Thus, after *Dewsnup,* courts have refused to allow lien stripping in Chapter 7 cases. *See, e.g., Talbert v. City Mortgage Servs. (In re Talbert),* 344 F.3d 555, 557–62 (6th Cir.2003); *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 783 (4th Cir. 2001); 4 *Collier on Bankruptcy* ¶ 506.06[1][b] at 506–150 (Lawrence P. King et al. eds., 15th ed.2003). However, the extent to which lien stripping would be allowed under other chapters of the Bankruptcy Code remained an open question after *Dewsnup,* as the Fifth Circuit explained:

(c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

**2.** One of the theories underlying the treatment of secured claims in bankruptcy is that "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." *United States v. Sec. Indus. Bank,* 459 U.S. 70, 75, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (citing *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935)). Thus, in various ways, the Bankruptcy Code protects secured claims and treats them differently from unsecured claims. *See, e.g.,* 11 U.S.C. § 361 (providing for adequate protection of property); 11 U.S.C. § 1129(b)(2)(A) (providing for a secured creditor in a Chapter 11 reorganization to receive the present value of its allowed secured claim).

The rationales advanced in the Dewsnup opinion for prohibiting lien stripping in Chapter 7 bankruptcies, however, have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12, and 13, where lien stripping is expressly and broadly permitted, subject only to very minor qualifications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters.

*Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 291 n. 21 (5th Cir.2000) (quoting Jane Kaufman Winn, *Lien Stripping After Nobelman*, 27 LOY. L.A. L. REV. 541, 554–55 (1994)).

Lien stripping can occur in a number of different ways under the Bankruptcy Code; thus, each circumstance must be separately examined in its own statutory context. For example, following *Dewsnup*, a number of Circuit Courts—including ours—reaffirmed the use of lien stripping in residential loans in Chapter 13 cases. *See Bellamy v. Federal Home Loan Mortgage Corp. (In re Bellamy)*, 962 F.2d 176, 180 (2d Cir.1992); *Lomas Mortgage USA v. Wiese*, 980 F.2d 1279, 1282 (9th Cir. 1992). However, the Supreme Court rejected this approach in *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), holding that " § 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." [3] *Id.* at 325–26, 113 S.Ct. 2106.

This appeal requires us to consider the question in a slightly different context from the one at issue in *Nobelman*. Specifically, the question in this case is whether a Chapter 13 debtor may bifurcate a non-residential secured real estate loan under § 506(a), but maintain payments on the claim pursuant to § 1322(b)(5) beyond the life of a Chapter 13 plan as circumscribed by § 1322(d). [4] In a very thorough and scholarly opinion, the bankruptcy court in this case concluded that the Bankruptcy Code allowed the debtor to do so. The bankruptcy court explained that:

> A chapter 13 plan may treat a secured debt under two statutory alternatives. First, the plan may modify the rights of a holder of a secured claim pursuant to § 1322(b)(2). Second, the plan may cure any default and maintain payments on the secured claim pursuant to § 1322(b)(5).

As to lien stripping under § 1322(b)(2), the bankruptcy court noted that "the debtors in this case propose to do precisely what the Supreme Court disallowed in *Nobelman* . . . ." However, the bankruptcy court distinguished *Nobelman*, reasoning that, because of the special treatment given by Congress to primary residences, "*Nobelman* applies only where the collateral is exclusively the debtor's principal residence." Thus, the bankruptcy court concluded that the Andy property was "not protected by the antimodification exception in § 1322(b)(2)."

 In analyzing the debtors' proposal to modify the Bank's secured rights while maintaining regular loan payments, the bankruptcy court first observed that such a modification would not be permitted un-

---

**3.** 11 U.S.C. § 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

**4.** 11 U.S.C. § 1322(d) provides that: "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years."

der § 1322(b)(2) because "a secured claim may not be modified under § 1322(b)(2) by reducing the size of the monthly payment for the duration of the original loan agreement (if the original duration exceeds the length of the plan)." Thus, as the court quite properly observed, "[i]f the chapter 13 debtor proposes to reduce the monthly payments to the secured creditor, the loan must be paid in full over the life of the plan (which may not exceed five years)." *See* 11 U.S.C. § 1322(d).

■ This requirement necessarily led the bankruptcy court to conclude correctly that "a chapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to 'cure and maintain' over the life of the original loan as authorized under § 1322(b)(5)." *See In re Scott*, 121 B.R. 605, 608–09 (Bankr.E.D.Okla.1990) (explaining that it is not permissible to modify a secured claim under § 1322(b)(2) while extending payments beyond the plan's term pursuant to § 1322(b)(5)); *see also In re Hussain*, 250 B.R. 502, 507 (Bankr. D.N.J.2000).

However, because the debtors proposed to continue making the same payments at the original interest rate until the secured debt was paid in full, the bankruptcy court identified another "typical strategy to deal with an undersecured creditor that is not secured by the debtor's principal residence." Namely, the bankruptcy court held that the proposed modification could be made under § 1322(b)(5), with a bifurcation of the secured debt under § 506(a). In other words, the secured debt would first be reduced under § 506(a) to the fair market value of the collateral, then the "cure and maintain" provisions of § 1322(b)(5) would allow the reduced secured debt to be paid over the life of the original note on the original interest terms. A number of bankruptcy courts have endorsed this approach, albeit mostly in dic-

ta. *See, e.g., In re McGregor*, 172 B.R. 718, 721 (Bankr.D.Mass.1994); *In re Pruett*, 178 B.R. 7, 8–9 (Bankr.N.D.Ala. 1995).

Applying this reasoning, the bankruptcy court modified the size of the secured claim to the fair market value of $210,000, then allowed the debtors to pay off the secured claim over the term of the original note (which extended beyond the 5 year life of the plan). The unsecured portion of the Bank's note was given the same treatment as the other unsecured creditors under the plan; that is, 17% of the $30,744.33 unsecured claim was to be repaid over the five year plan with the remainder to be discharged upon successful completion of the plan.

On appeal, the district court reversed in a thoughtful order. The district court agreed with the bankruptcy court that a chapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to 'cure and maintain' beyond the life of the Chapter 13 plan as authorized under § 1322(b)(5). The district court also agreed that the debtors' proposal was not viable under § 1322(b)(2). However, the district court disagreed with the bankruptcy court's analysis under § 1322(b)(5). Instead, it held that modification of the loan under § 506(a) and repayment over a term exceeding the length of the plan pursuant to § 1322(b)(5) was not permitted. The district court concluded that *Nobelman* required bifurcation of debt within the context of Chapter 13 and that the five-year term limit imposed by § 1322(d) applied.

■ Although the bankruptcy court's analysis is arguably much closer to the original vision of the Bankruptcy Code than the district court's holding, we are not writing on a clean slate. The Supreme Court has spoken directly in *Dewsnup* and *Nobelman*. *Dewsnup* cautioned against

courts fashioning a "broad new remedy" under § 506(a) where the remedy was not "mentioned somewhere in the Code itself or in the annals of Congress." 502 U.S. at 420, 112 S.Ct. 773. In *Nobelman,* the Supreme Court explained that, in a Chapter 13 plan, stripping down an undersecured lien to the value of the underlying collateral pursuant to § 506(a) valuation, "would require a modification of the rights of the holder of the security interest" pursuant to § 1322(b)(2). 508 U.S. at 332, 113 S.Ct. 2106. In order to hold that the debtor's lien stripping proposal is viable under the "cure and maintain" provision of § 1322(b)(5), we would have to hold that § 506(a) coupled with § 1322(b)(5) provides a new remedy allowing modification of secured debts in Chapter 13 independent of § 1322(b)(2). The logic of *Dewsnup* and *Nobelman* do not permit this construction. As both the district court and bankruptcy court noted, lien stripping on debts secured by real property that is not the debtor's primary residence is permissible in Chapter 13, even after *Nobelman.* However, it must be accomplished in a manner consistent with § 1322(b)(2). Because § 1322(b)(2) does not allow a modified secured debt to be paid over a period of time longer than the plan term, the debtors' proposed plan modification must be disallowed.

██ Thus, we agree with the district court that: (1) § 1322(b)(2) by itself does not permit the debtors to repay the secured claim over a period longer than the plan term; (2) a chapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to "cure and maintain" beyond the plan term as authorized under § 1322(b)(5); and (3) a modification of secured debt under Chapter 13 must be accomplished in a manner consistent with § 1322(b)(2). Therefore, a debtor may not use § 506(a) in combination with § 1322(b)(5) to reduce the secured claim

and repay it over a period longer than the plan term.

## III

In addition to the question of whether the debtors may strip down their secured debt in Chapter 13 in the manner proposed, the parties raise additional issues that require our decision.

## A

██ The debtors argue that the Bank is precluded from challenging the proposed debt modification by the *res judicata* effect of the confirmed plan. The debtors are correct that "[t]he provisions of a confirmed plan bind the debtor and each creditor ... whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Likewise, it is beyond cavil that "[o]nce a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir.1995). Thus, if a creditor fails to timely object to a plan or appeal a confirmation order, "it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code." *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),* 193 F.3d 1083, 1086 (9th Cir.1999) (quoting *Andersen v. UNIPAC-NEBHELP (In re Andersen),* 179 F.3d 1253, 1258 (10th Cir.1999)). This rule is consistent with the general principle of *res judicata* that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

██ We have recently observed that in the unique bankruptcy context, "the principle of res judicata should be invoked

only after careful inquiry because it blocks unexplored paths that may lead to truth...." *Latman v. Burdette*, 366 F.3d 774 (9th Cir.2004) (internal quotation marks and citations omitted). Although confirmed plans are *res judicata* to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor. In other words, if Chapter 13 plan provisions do not adequately identify a secured creditor's modified claims, to hold that the plan modified the claim "would be to allow lien stripping by ambush." *In re Henline*, 242 B.R. 459, 465–66 (Bankr.D.Minn.1999) (holding that it would violate Fifth Amendment due process guarantee against taking of property to allow a petitioner to strip a lien when the secured creditor was not sufficiently identified as "unsecured" in the plan even though the debt was listed as unsecured in the petition).

■■■■ Here, during plan confirmation and modification, the bankruptcy court specifically reserved the question at issue because it had been raised via an adversary proceeding. "[I]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect." *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995) (quoting *In re Beard*, 112 B.R. 951, 956 (Bankr.N.D.Ind.1990)). Thus a Chapter 13 plan confirmed while an adversary proceeding was pending would not have *res judicata* effect on the adversary proceeding.

## B

■■■■ The Bank contends that the bankruptcy court's valuation was in error and that the bankruptcy court employed the incorrect date for making the valuation. However, the Bank waived any objection to the bankruptcy court's valuation by failing to contest it before the bankruptcy court. As a general rule, issues "not presented to the trial court cannot generally be raised for the first time on appeal." *United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991). However, we have recognized exceptions to this general rule when (1) there are exceptional circumstances, (2) the new issue arises while the appeal is pending because of a change in the law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue below. Further exception is also made if the trial court's decision was plain error and injustice would otherwise result. *Id.* None of those circumstances exist here. In the absence of contrary evidence, an owner's opinion of property value may be conclusive. *In re Brown*, 244 B.R. 603, 611 (Bankr.W.D.Va.2000). Thus, since the Bank provided no contrary evidence, the bankruptcy court was well justified in relying on the debtor's affidavit of value. To allow the Bank to contest valuation on appeal would be manifestly unfair and an abuse of the appellate process. As we observed in another, similar bankruptcy appeal, "[f]ederal courts are not run like a casino game in which players may enter and exit on pure whim." *Investors Thrift v. Lam (In re Lam)*, 192 F.3d 1309, 1311 (9th Cir.1999). The Bank has forfeited its right to challenge value of the collateral as determined by the bankruptcy court.

## IV

For the reasons stated herein, we affirm the judgment of the district court in its entirety.

**AFFIRMED.**