Robert S. McGRAHAN, Debtor.

State of New Hampshire, Appellant,

v.

Robert S. McGrahan, Appellee.

BAP No. NH 11–033.
Bankruptcy No. 09–13578–JMD.

United States Bankruptcy Appellate Panel
of the First Circuit.

Dec. 7, 2011.

Michael A. Delaney, Attorney General, and Peter C.L. Roth, Senior Assistant Attorney General, on brief for Appellant.

Raymond J. DiLucci, Esq., on brief for Appellee.

Frederick F. Rudzik, Chief Assistant General Counsel, on brief for amicus curiae, State of Florida, Department of Revenue.

Before FEENEY, TESTER, and HOFFMAN, United States Bankruptcy Appellate Panel Judges.

HOFFMAN, Bankruptcy Judge.

The State of New Hampshire Department of Health and Human Services ("DHHS" or the "State")[1] appeals from the bankruptcy court's April 22, 2011 order granting the amended motion of the debtor, Robert S. McGrahan, to modify his confirmed chapter 13 plan pursuant to Bankruptcy Code § 1329.[2] In the modified plan, the debtor sought to reduce the amount of DHHS's claim for unpaid child support obligations to account for certain federal income tax refunds of the debtor seized by DHHS after plan confirmation. The bankruptcy court interpreted the modified plan, which provided for full payment of DHHS's claim through plan payments, as prohibiting DHHS from engaging in any further intercepts of the debtor's income tax refunds. For the reasons set forth below, we **REVERSE** the bankruptcy court's decision and **REMAND** for entry of an order consistent with this opinion.

## BACKGROUND

The debtor filed a chapter 13 petition on September 17, 2009. In his first amended chapter 13 plan (the "First Amended Plan"), he listed DHHS as a creditor holding a $13,000.00 claim for unpaid child support. As required by § 1322(a)(2), the First Amended Plan provided that DHHS's claim would be "paid in full through the plan." It also included the following provision:

The Internal Revenue Service [sic] is seizing Income Tax Refunds to pay Child Support Arrears. The Proof of Claim of NH DHHS Dept. of Child Services will be decreased annually to reflect the amounts seized.[3]

The bankruptcy court confirmed the First Amended Plan on January 22, 2010. Thereafter, the debtor through his counsel filed a priority proof of claim on DHHS's behalf in the amount of $13,862.39.[4] No objection was filed, and the bankruptcy court allowed DHHS's claim.

After confirmation, DHHS intercepted two of the debtor's federal income tax refunds totaling $4,257.13, and applied the seized funds to its prepetition child support claim. DHHS did not amend its proof of claim to reflect the amounts seized. Consequently, the chapter 13 trustee continued to make plan payments to DHHS based on its allowed claim without adjusting for the amounts DHHS received from the intercepted tax refunds.

In October 2010, the debtor moved to modify the First Amended Plan in order to increase DHHS's arrearage claim from $13,000.00 (as set forth in the First Amended Plan) to $13,862.39 (the amount of DHHS's allowed claim) and to remove

---

1. DHHS is tasked with assisting in the collection of child support arrearages from non-paying parents.

2. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*

3. This provision was included in two sections, both under the section entitled "Plan Payments" and the section entitled "Domestic Support Obligations."

4. Section 501(c) provides that where a creditor does not timely file a proof of its claim, the debtor may file a proof of such claim. In his brief, the debtor asserts that he filed the proof of claim on DHHS's behalf because the chapter 13 trustee will make disbursements under a plan only to parties who have filed proofs of claim.

the above-quoted plan provision regarding DHHS's seizure of his tax refunds, stating that the provision was "overly burdensome" to him and to the court. No objections were filed and, after a hearing, the bankruptcy court granted the motion and approved the modified plan (the "Modified Plan").

DHHS moved for reconsideration of the court's order approving the debtor's motion to modify, arguing that the debtor's motion should not have been granted because the proposed modification deprived DHHS of its right to seize tax refunds, a right that was protected by § 362(b)(2)(F)[5] and, as such, the modification did not comply with § 1325(a) nor was it authorized under § 1329(a). By order dated December 1, 2010 ("December 1st Order"), the bankruptcy court denied the motion to reconsider, stating that:

> The motion to reconsider is denied on the basis that it is moot due to the fact that there is no provision in the modified plan or the order approving modified plan that prohibits the state from taking any act[i]on to pursue collection of domestic support obligations under state or federal law pursuant to the findings set forth on the record this date.

On December 15, 2010, the debtor filed an amended motion to modify his plan (the "Amended Motion to Modify") and a proposed modified plan (the "Second Modified Plan") seeking to reduce the amount of DHHS's prepetition claim to $9,605.26 to account for the previously seized tax re-

funds[6] and to add the following provision to the plan:

> The Claim of NH DHHS Dept. of Child Support Services was filed in the amount of $13,862.39; however, since the inception of this Chapter 13 Bankruptcy the Creditor has intercepted the Debtor's Federal Income Tax Refunds. The total amount of seized by the Creditor is $4,257.13; therefore the Claim of NH DHHS Dept. of Child Support Services, being paid through the Debtor's Chapter 13 Plan of Reorganization, has been reduced to $9,605.26.

In a response to the Amended Motion to Modify, DHHS requested, among other things, that the bankruptcy court either: (1) expressly rule that the Second Modified Plan did not prohibit DHHS from exercising its right to intercept tax refunds as authorized by § 362(b)(2)(F); or (2) order the debtor to amend the Second Modified Plan to "expressly provide for the tax refund intercepts." DHHS did not object to the reduction of its claim. After a hearing, the bankruptcy court took the matter under advisement.

On April 22, 2011, the bankruptcy court entered an order granting the Amended Motion to Modify. The court concluded that while § 362(b)(2)(F) permitted a support creditor to intercept tax refunds before plan confirmation, once a plan that provides for full payment of the support creditor's claim is confirmed, the support creditor may no longer intercept refunds. The bankruptcy court determined that because the Second Modified Plan provided

---

**5.** Section 362(b)(2)(F) provides that the automatic stay does not apply to the interception of tax refunds by a governmental authority seeking to collect outstanding child support obligations.

**6.** In his Amended Motion to Modify, the debtor stated, "That despite reasonable request of the Debtor, it has become apparent that the

Creditor, State of NH DHHS Dept. of Child Support Services, will not refund the Debtor for post-petition seizures of Federal Income Tax Refunds in the total amount of $4,257.13" and that he should be allowed to amend his plan to decrease DHHS's "prepetition arrearage ... to account for the above mentioned seizures."

for full payment of DHHS's claim as required by § 1322(a)(2), and because nothing in §§ 1322 or 1325 requires a chapter 13 plan to include a provision permitting a support creditor to intercept tax refunds as described in § 362(b)(2)(F), DHHS was not permitted to engage in any further tax refund intercepts.

This appeal followed. Although DHHS sought a stay pending appeal from both the bankruptcy court and the Panel, those requests were denied.

## JURISDICTION

■ Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.),* 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). Generally, a bankruptcy court order granting a motion to modify a confirmed chapter 13 plan pursuant to § 1329 is a final order. *See Storey v. Pees (In re Storey),* 392 B.R. 266 (6th Cir. BAP 2008). Thus, we have jurisdiction to hear and determine this appeal.

## STANDARD OF REVIEW

■ Appellate courts apply the clearly erroneous standard to reviewing findings of fact. Conclusions of law are reviewed *de novo. See Lessard v. Wilton–Lyndeborough Coop. School Dist.,* 592 F.3d 267, 269 (1st Cir.2010). Because plan modification under § 1329 is discretionary, our review is limited to a determination of whether the bankruptcy court abused its discretion in confirming the Second Modified Plan. *See Barbosa v. Solomon,* 235 F.3d 31, 41 (1st Cir.2000) (citation omitted).

## DISCUSSION

### I. Section 1329(a)—Plan Modification

Section 1329(a) provides that a debtor may modify a plan at any time after confirmation of the plan but before completion of plan payments in order to effectuate a change in: (1) the amount paid to creditors; (2) the time for such payments; (3) the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or (4) in limited circumstances, the amounts to be paid by the debtor to purchase health insurance for the debtor and dependents. *See* 11 U.S.C. § 1329(a). Any such modification must comply with the provisions of § 1322(a) (setting forth requirements for plan contents) and § 1325(a) (setting forth requirements for plan confirmation) to be approved. 11 U.S.C. § 1329(b).

In this case, the debtor's Amended Motion to Modify to reduce the DHHS's claim would satisfy either clause (1) or (3) of § 1329(a). Thus, the issue is not whether the bankruptcy court erred in approving the Amended Motion to Modify. Rather, it is whether the court erred in determining that the effect of the modification was to prohibit the DHHS from engaging in

further tax refund seizures. To resolve this issue requires an examination of the interplay between § 362(b)(2)(F) and § 1327 of the Bankruptcy Code.

## II. The Interplay Between § 362(b)(2)(F) and § 1327

Upon the filing of a bankruptcy petition, the Bankruptcy Code imposes an automatic stay of any act to collect a debt that arose before the commencement of the case. 11 U.S.C. § 362(a)(6). Prior to BAPCPA, an exception to the automatic stay permitted creditors who were owed prepetition domestic support obligations to pursue collection but only against assets that were not property of the bankruptcy estate. *See* 11 U.S.C. § 362(b)(2)(B). BAPCPA added § 362(b)(2)(F), which expressly excepts from the automatic stay the interception of a debtor's tax refunds for the payment of a support obligation, even where the tax refund is property of the estate. *See* 11 U.S.C. § 362(b)(2)(F).[7] DHHS's intercepting the debtor's tax refunds to satisfy his prepetition domestic support obligations falls squarely within the § 362(b)(2)(F) exception to the automatic stay.

The bankruptcy court concluded that although such seizures are not prohibited by the automatic stay, they nevertheless could violate a confirmed plan. In so holding, the bankruptcy court focused on the binding effect of a confirmed plan under § 1327(a).

### A. The Binding Effect of the Second Modified Plan

■ Section 1327(a), which addresses the effects of plan confirmation, provides in relevant part:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a). Under this provision, once a bankruptcy plan is confirmed, the debtor and each creditor are bound by its terms. *See id.* As the First Circuit has explained, "confirmation of a Chapter 13 plan customarily is res judicata as to all issues that were or could have been decided during the confirmation process." *Carvalho v. Federal Nat'l Mortg. Ass'n (In re Carvalho)*, 335 F.3d 45, 49 (1st Cir.2003). "There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order." 4–1327 Alan N. Resnick & Henry J. Sommer, *Collier Bankruptcy Manual*, ¶ 1327.02[1] (3d ed. rev.). The United States Supreme Court has emphasized that plan confirmation orders are final and binding regardless of pre-confirmation rights held by creditors. *See United Student Aid Funds, Inc. v. Espinosa*, —— U.S. ——, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).

■ The binding effect of confirmation has led courts to conclude that once a plan is confirmed, a creditor's rights and interests are defined within the boundaries of the plan, and proceedings that are inconsistent with the confirmed plan are improper, even if they fall within an exception to the automatic stay.[8] As one commentator has stated:

---

**7.** Section 362(b)(2)(F) provides, in pertinent part: "The filing of a petition ... does not operate as a stay ... of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under analogous State law...." 11 U.S.C. § 362(b)(2)(F).

**8.** *See, e.g., Florida Dept. of Revenue. v. Rodriguez (In re Rodriguez)*, 367 Fed.Appx. 25, 28

Because creditors are limited to those rights that they are afforded by the plan, they may not take actions to collect debts that are inconsistent with the method of payment provided for in the plan. They may not exercise prepetition rights they may have had to collect a debt by setoff, foreclosure or otherwise. The automatic stay of section 362(a) usually remains in effect as to collection efforts on virtually all prepetition debts until the case is closed or dismissed or until a discharge order is entered. *Even actions that would be permitted by an exception to the automatic stay can be barred by the terms of a confirmed plan.*

4–1327 *Collier Bankruptcy Manual,* at ¶ 1327.02[1][b] (emphasis added). Thus, it is clear that all creditors are bound by a confirmation order and that even actions that would be permitted by an exception to the automatic stay (such as the interception of tax refunds to pay domestic support obligations as authorized by § 362(b)(2)(f)) may be prohibited under a confirmed plan.

▆▆▆▆ The binding effect of a chapter 13 plan extends, however, only to those issues "which were actually litigated by the parties and any issue necessarily determined by the confirmation order." *Torres Martinez v. Arce (In re Torres Martinez),* 397 B.R. 158, 165 (1st Cir. BAP 2008) (citing 8 *Collier on Bankruptcy* ¶ 1327.02, at 1327–3 (15th ed. 1998)); *see also In re Munoz Marquez,* 2011 WL 4543226, *10–11, 2011 Bankr.LEXIS 3806, *33–34 (Bankr.D.P.R. Sept. 28, 2011); *In re Cur-*

*tis,* 2010 WL 1444851, 2010 Bankr.LEXIS 1252 (Bankr.S.D.Ill. Apr. 9, 2010). Conversely, a confirmed chapter 13 plan is not binding as to issues "not sufficiently evidenced in a plan to provide adequate protection to the creditor." *Enewally v. Washington Mutual Bank (In re Enewally),* 368 F.3d 1165, 1172–73 (9th Cir.2004). Thus, for the Second Modified Plan to have the preclusive effect on DHHS's right to intercept tax refunds suggested by the bankruptcy court, it must have specifically addressed that right. It did not. Although the First Amended Plan contained a provision acknowledging that DHHS was making such seizures, the Modified Plan and the Second Modified Plan were silent as to DHHS's right to intercept. That silence cannot be interpreted as implicitly prohibiting DHHS from taking such action especially in light of the December 1st Order denying DHHS's motion to reconsider confirmation of the Modified Plan in which it stated "there is no provision in the modified plan or the order approving the modified plan that prohibits the state from taking any act[i]on to pursue collection of domestic support obligations under state or federal law." In order for the Second Modified Plan to preclude DHHS from tax intercepts, the plan should have explicitly and conspicuously said so. Because the Second Modified Plan like the Modified Plan was silent as to DHHS's right to intercept the debtor's tax refunds, that silence cannot be deemed under § 1327(a) as binding the State and prohibiting it from exercising those rights.

(11th Cir.) (noting that after confirmation, the plan and confirmation order control), *cert. denied,* —— U.S. ——, 131 S.Ct. 128, 178 L.Ed.2d 34 (2010); *In re Worland,* 2009 WL 1707512, 2009 Bankr.LEXIS 1512 (Bankr. S.D.Ind. Jun. 16, 2009) (holding that creditor's collection activities were not stayed but were in violation of confirmation order since payment of ex-spouse's claim was provided for in the plan); *Fort v. Florida Dept. of Reve-* *nue (In re Fort),* 412 B.R. 840 (Bankr.W.D.Va. 2009); *In re Dagen,* 386 B.R. 777, 783 (Bankr.D.Colo.2008) ("[T]he ability of a support creditor to continue to collect a prepetition debt is only limited to the extent that the confirmed plan abrogates these rights."); *In re Gellington,* 363 B.R. 497, 502 (Bankr. N.D.Tex.2007); *In re Sanders,* 243 B.R. 326, 330 (Bankr.N.D.Ohio 2000).

## B. Law of the Case Doctrine

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Vázquez Laboy v. Doral Mortg. Corp. (In re Vázquez Laboy)*, 647 F.3d 367, 372–73 (1st Cir.2011); *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 53 (1st Cir.2009) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)); *Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir.2005); *Whitehouse v. LaRoche*, 277 F.3d 568, 573 (1st Cir.2002). The doctrine "is a prudential principle that 'precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided.' " *Field v. Mans*, 157 F.3d 35, 40 (1st Cir.1998) (quoting *Cohen v. Brown Univ.*, 101 F.3d 155, 167 (1st Cir.1996)).

The law of the case doctrine has two aspects. *See Negron–Almeda v. Santiago*, 579 F.3d 45, 50 (1st Cir.2009) (citations omitted). The first, called the mandate rule, "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." *Id.* (citation omitted). For a bar to exist under the mandate rule, an issue must have been " 'actually considered and decided by the appellate court,' or ... be 'necessarily inferred from the disposition on appeal.' " *Field v. Mans*, 157 F.3d 35 at 40 (citing *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 770 (1st Cir. 1994)). The second aspect of the law of the case doctrine "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." *Negron–Almeda*, 579 F.3d at 50–51 (citation omit-ted). Thus, once an order is final, and the same has not been appealed, it becomes the law of the case. *First Am. Title Ins. Co. v. Pifalo (In re Pifalo)*, 379 B.R. 1, 4 (1st Cir. BAP 2007); *see also Harlow v. Children's Hospital*, 432 F.3d at 55 (citations omitted) (holding that law of the case doctrine is not applicable if prior ruling was interlocutory matter).

Here, the second aspect applies. In the December 1st Order, the bankruptcy court denied DHHS's motion to reconsider because it found that there was nothing in the First Amended Plan that "prohibits the state from taking any action to pursue collection of domestic support obligations under state or federal law...." Neither DHHS nor the debtor filed a notice of appeal or sought a stay of the December 1st Order. The December 1st Order is, therefore, a final order interpreting the Modified Plan as not prohibiting DHHS from pursuing collection. The Second Modified Plan did not change anything with respect to DHHS's tax intercepts (both plans were silent on that issue). Thus, the December 1st Order is the law of the case as to whether the Second Modified Plan expressly prohibited DHHS from intercepting tax refunds. *See In re Pifalo*, 379 B.R. at 4 (holding that final orders that are not appealed become the "law of the case").

### CONCLUSION

We conclude the bankruptcy court erred as a matter of law for two reasons. First, the court erroneously ruled that because the Second Modified Plan no longer contained a permissive provision for tax refund intercepts by the State, such intercepts became implicitly prohibited, and second, the court failed to follow its own prior ruling in the December 1st Order that nothing in the Modified Plan prohibited DHHS from taking any action to pur-

sue collection of domestic support obligations under state or federal law.

We, therefore, **REVERSE** the bankruptcy court's decision and **REMAND** for entry of an order consistent with this opinion.